440 So.2d 115 (1983)
STATE of Louisiana
v.
Tina L. WALTERS and Janice Chatman.
No. 82-KA-1422.
Supreme Court of Louisiana.
October 17, 1983.
Rehearing Denied November 18, 1983.
*117 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Harry F. Connick, Dist. Atty., John H. Craft, Jack Peebles, Asst. Dist. Attys., for plaintiff-appellee.
Ronald Rakosky, New Orleans, Burton W. Sandler, Counsel for defendant-appellant.
LEMMON, Justice.
This is an appeal by two codefendants who were convicted of attempted obscenity. Principal issues involve the lack of a pre-arrest adversary hearing, the joinder of the defendants, the constitutionality of the statute, the sufficiency of the evidence, and the excessiveness of the sentence.[1]
Facts
Two police officers, dressed in casual attire so as not to reveal their identity as policemen, went to the Ellwest Stereo Theatre, located on Bourbon Street in the New Orleans French Quarter, to investigate reports of "nude dancing". They purchased tokens from a cashier and were directed to separate booths within the establishment. Each booth had a glass window, which was covered by a screen that could be raised to allow the occupant to view a woman behind the glass.
The first officer entered the booth and deposited a token. The screen rose, permitting the officer to see a young woman (later identified as Tina Walters) clad in a black negligee. When the woman told the officer that she would take off the "top" if he would "tip" her one dollar, he inserted a dollar bill through a small hole in the glass (pointed out by the woman). After removing the top and moving about slightly, the woman suggested that she would remove the negligee panties if the officer would give her an additional dollar. He didand she did. She then moved closer to the glass and prominently displayed her pubic hair and vagina next to the glass by moving her *118 pelvis in an undulating motion. There was no musical accompaniment to any of her movements.
Shortly thereafter, the screen lowered, signalling the "end of the show". The woman told the officer that he could see a "better show" if he would move to a larger booth at the end of the row.[2] The officer went to the designated booth and inserted four tokens (worth one dollar). When the screen raised, the officer saw the same woman behind a body-length glass window, again dressed in the black negligee. At her suggestion, the officer gave her five dollars by inserting the money through a hole in the glass. She then removed her garments, lay on her back, placed her legs against the glass window and began to thrust her pelvis in an up-and-down and back-and-forth motion, giving her "patron" a close and unobstructed view of her vagina and pubic hair. There was no musical accompaniment to this motion, which continued for a few minutes until the screen lowered.
In the meantime, the second officer had gone through a very similar experience in a different booth with another young woman (later identified as Janice Chatman).[3] The two officers met and discussed their similar observations, and they then arrested the cashier and the two young women.
The prosecutor filed a single bill of information charging Chatman and Walters with obscenity in violation of La.R.S. 14:106A(1) by exposing their genitals in a public place with intent to arouse sexual desire.[4] After trial by jury, both defendants were found guilty of attempted obscenity. Each was fined $1,000 and given a suspended one-year jail term, with two years of probation. Each was also ordered to pay $74 in court costs.
Pre-Arrest Adversary Hearing
Defendants contend that the trial court erred in denying their pretrial motion to quash, in which they argued that La.R.S. 14:106 F required the state to provoke an adversary hearing to have their conduct declared obscene before they could be arrested or prosecuted for engaging in that conduct.
After a substantial amount of First Amendment litigation of "prior restraint" issues, the Louisiana Legislature enacted the prior adversary hearing section of the obscenity statute in a laudable effort to provide "sensitive tools" to avoid the problems. See Freedman v. Maryland, 380 U.S. 51, 85 S.Ct. 734, 13 L.Ed.2d 649 (1965); Heller v. New York, 413 U.S. 483, 93 S.Ct. 2789, 37 L.Ed.2d 745 (1973); State v. Eros Cinema, 262 La. 706, 264 So.2d 615 (1972); Vance v. Universal Amusement Co., 445 U.S. 308, 100 S.Ct. 1156, 63 L.Ed.2d 413 (1980); Parish of Jefferson v. Bayou Landing, 350 So.2d 158 (La.1977). The statute provides for a judicial determination that certain "motion pictures, printed materials, and photographic materials" are obscene before an exhibitor or distributor can be arrested and prosecuted for displaying or selling those materials.[5]
*119 Thus, the prior adversary hearing requirement for all but the most obvious pornography is only applicable to printed matter, photographs and films.[6] This conclusion not only is apparent from the language of the statute, but also is logical from an analysis of the nature of the protection sought to be provided. A film, photograph or item of printed material is "fixed" and can readily be examined by a court at an adversary hearing for the purpose of determining its obscenity. A "live" performance is an entirely different sort of thing and is much less susceptible of being recaptured or recast in the courtroom context of the adversary hearing. Moreover, since an adversary hearing is not constitutionally required before criminal liability may attach and prosecution may be instituted, the Legislature could properly restrict the added protection only to "nonhard core" printed matter, photographs and films. See Delta Book v. Cronvich, 304 F.Supp. 662 (E.D.La.1969), Rubin, J. dissenting; Milky Way Prod., Inc. v. Leary, 305 F.Supp. 288 (S.D.N.Y.1969), aff'd per curiam sub nom., New York Feed Co. v. Leary, 397 U.S. 98, 90 S.Ct. 817, 25 L.Ed.2d 78 (1970); United States v. Young, 465 F.2d 1096 (9th Cir.1972).
The trial judge correctly ruled that the prosecution was properly instituted, despite the lack of a prior judicial determination that the charged conduct was obscene.
The Joinder of Defendants
Defendants contend that they were misjoined as defendants over their objections, arguing that the conduct charged to be criminal consisted of separate acts and that neither participated in any manner in the other's acts.
Although the separate conduct of each defendant singularly constituted the offense charged against each, the evidence nevertheless clearly demonstrated a common, ongoing, commercial, criminal enterprise, in which these two young women and others not charged in this indictment were engaged. The striking similarity of the defendants' methods of operation, the display of their lewd conduct in the same commercial establishment (which had as its obvious purpose the promotion of such pornography), and the temporal proximity of the similar conduct are all factors which support the state's theory of joinder of defendants.
Defendants were obviously aware of their joint purpose and of their individual participation as part of one overall scheme. The uniformity of their lewd displays indicated a design as part of a single criminal plan. They were "so interconnected in time, place, manner as to constitute a common scheme or plan". United States v. Santoni, 585 F.2d 667, 673 (4th Cir.1978).
Furthermore, there is absolutely no showing of any possible prejudice which could have ensued from their joint trial.[7] See United States v. Martin, 567 F.2d 849 (9th Cir.1977); La.C.Cr.P. Art. 921. The similarity of the evidence against each and the essentially uncontested nature of the facts make it difficult to envision any benefit which either could have derived from a separate trial, other than some speculative benefit which could have been derived from the fact that trying the case twice might have been more difficult for the state and *120 would have consumed more judicial time of the trial court.
The trial court did not commit reversible error in refusing to quash the indictment and in trying the two defendants in a single trial.
Sufficiency of the Evidence
Defendants first contend that the trial judge erred in denying their motion for a new trial, arguing that their conduct did not constitute a violation of La.R.S. 14:106A(1), which, at the time of the offense, proscribed the "intentional ... [e]xposure of the genitals, pubic hair, ... vulva, ... in any public place or place open to the public view with the intent of arousing sexual desire or which appeals to prurient interest or is patently offensive". (Emphasis supplied) See note 4, above. Defendants argue that the charged conduct did not occur in a public place, inasmuch as their "performances" were observable by only the single patron in the booth.
Section 106A(1) was amended in 1979. The former statute prohibited intentional exposure "in any location or place open to the view of the public or people at large such as a street, highway, neutral ground, sidewalk, park, beach, river bank or other place or location viewable therefrom...." This court interpreted that phrase in State v. Muller, 365 So.2d 464 (La.1978), a case involving a defendant who intentionally exposed his penis in a supermarket. The Muller decision did not turn on whether defendant acted "with intent to arouse sexual desire" or whether he intentionally exposed himself, but on whether a supermarket was a place open to public view, as contemplated by the statute. In giving a narrow construction to the term, this court determined that the Legislature had intended to include only places like parks, sidewalks, parking lots, roads and the like, and not to include buildings and other commercial establishments open to the public, such as supermarkets and department stores.
The legislative intent of Act 252 of 1979, which adopted the present broader language, was made very clear in the Act's title, which states that the purpose of the amendment was "to include within the scope of the statute obscenity which takes place in any enclosed or unenclosed area operated to receive or accommodate the public or people at large". (Emphasis supplied) Given this clearly announced purpose of the amendment, we conclude that the Ellwest Stereo Theatre was a "public place" within the contemplation of the newly defined and expanded scope of the crime.
No special credentials were required to enter and to view defendants other than simple payment of the prescribed fees. The mere fact that the charged conduct of each defendant took place in an area where no member of the public other than the patron in the booth could see the defendant does not remove the conduct from the reach of the section of the statute under which they were charged. See Ridgeway v. State, 553 P.2d 511 (Okl.Cr.App.1976). Compare State v. Brooks, 275 Or. 171, 550 P.2d 440 (1976). The conduct clearly took place in an enclosed area operated to receive the public at large.
Furthermore, there is no question (nor is it contested) that a rational juror could have found beyond a reasonable doubt from the evidence that defendants exposed their genitals, pubic hair and vulva, and that such exposure was done with intent to appeal to the prurient interest of and to arouse the sexual desire of the lone male viewer closeted in the booth on the other side of the glass partition. Therefore, the evidence was clearly sufficient under the statute to support a conviction of the offense of obscenity or of the lesser verdict of attempted obscenity, a responsive verdict on which the trial court instructed the jury without objection. See State v. Thomas, 424 So.2d 254 (La.1982); State ex rel. Elaire v. Blackburn, 424 So.2d 246 (La.1982). See also La.R.S. 14:27.
Defendants finally argue that the verdict of attempted obscenity was irrational, since Section 106A(1) is itself an "attempt-like statute". They argue that the jury, in using the general attempt statute *121 (on which instructions were given without objection), convicted them of an "attempt to attempt" an illegal act.
Obscenity under Section 106A(1) is not an inchoate offense, since it requires the act of "exposure". Thus, defendants' argument that there can be no attempt to commit this offense, because the completed offense is itself in the nature of an attempt, has no merit.[8] Moreover, La.R.S. 14:27 (the attempt statute) expressly provides that it is no defense to an attempt charge that the offense was actually completed.
Constitutionality of the Statute
Defendants' first contention is that the trial court erred in denying their motion to quash, which challenged the constitutionality of Section 106A(1) as vague, overbroad and impermissibly restrictive of freedom of expression.
The vagueness argument relates to the degree of clarity with which the offense is defined, and defendants only challenge the phrase "with the intent of arousing sexual desire".
The statute requires the state to prove that the offender acted with a specific intent to arouse sexual desire, either of the actor or of the viewer. The requirement of a state of mind indicating an active desire to arouse sexual appetite could not be more clearly defined. See La.R.S. 14:10. Virtually the same words are used in La.R.S. 14:81 to define indecent behavior with juveniles, and its constitutionality has never effectively been challenged. See State v. Milford, 225 La. 611, 73 So.2d 778 (1954); State v. Saibold, 213 La. 415, 34 So.2d 909 (1948). The phrase "arousing sexual desire" is certainly one which gives an ordinary person of reasonable intelligence fair notice of the proscribed conduct. See State v. Jackson, 404 So.2d 952 (La.1981).
Defendants next contend that Section 106A(1) was intended to apply to indecent exposure (such as by "flashers") and that charging defendants under Section 106A(1) improperly expands the statute's scope to invade areas of conduct and expression protected by the First Amendment. Defendants argue that they have a First Amendment right to be prosecuted only under a statute which contains the standards for obscenity announced in Miller v. California, 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973), and that the Legislature intended Section 106A(2), which contains the Miller standards, to regulate live sexual conduct.[9]
*122 The Miller case involved a prosecution for mailing unsolicited brochures containing explicit photographs of sexual activities. The Court held that state statutes regulating "works which depict or describe sexual conduct" must specifically define the conduct prohibited by state law, as written or authoritatively construed. (Emphasis supplied) However, the Miller decision did not limit prosecutions for "live" lewd exhibitions of the genitals in an offensive and "unartistic" manner only to statutes which incorporate the Miller standards. In footnote 8 in Miller, the Court stated:
"Although we are not presented here with the problem of regulating lewd public conduct itself, the States have greater power to regulate nonverbal, physical conduct than to suppress depictions or descriptions of the same behavior." (Emphasis supplied) 413 U.S. at 26, 93 S.Ct. at 2616.
Under the defendants' argument, the state could only prosecute cases involving public "indecent exposure" with intent to arouse sexual desire under a statute containing the Miller standards. Clearly, the Miller decision itself imposed no such limitation, because that case only dealt with printed materials and photographs. However, we need not decide major constitutional questions regarding the state's right to regulate all forms of live conduct, including legitimate dance by naked persons. See Miller v. California, above, at 26, footnote 8, 93 S.Ct., at 2616, footnote 8; California v. Larue, 409 U.S. 109, 93 S.Ct. 390, 34 L.Ed.2d 342 (1972); Doran v. Salem Inn, 422 U.S. 922, 95 S.Ct. 2561, 45 L.Ed.2d 648 (1975); Scnad v. Mount Ephraim, 452 U.S. 61, 101 S.Ct. 2176, 68 L.Ed.2d 671 (1981). We simply hold that live lewd conduct (either by a "flasher" or by a paid exhibitionist), in order to be entitled to First Amendment protection, must be more than the vulgar display of sex organs for the purpose of arousing sexual desire.
Here, the evidence clearly portrayed behavior which is beyond the scope of any arguable First Amendment protection that may apply to other types of live conduct. For conduct to come under arguable First Amendment protection of expression, there must be some element of communication or some indication of intention to express an idea. California v. LaRue, 409 U.S. 109, 93 S.Ct. 390, 34 L.Ed.2d 342 (1972). One searches in vain in the present case to find any element of communication or indication of intention to express an idea. Defendants' conduct consisted almost entirely of gross sexuality and not at all of communication or expression. See California v. LaRue, above. The "performances" bore no semblance to legitimate theatre or dance. Moreover, the Miller decision permits the state to regulate "hard core" sexual conduct, such as the "lewd exhibition of the genitals", when (as here) there is no serious literary, artistic, political, or scientific value.
We therefore conclude that prosecution of defendants' conduct under La.R.S. 14:106A(1) did not impermissibly restrict their freedom of expression.[10]
That the state could have chosen to prosecute defendants under La.R.S. 14:106A(2) is also of no moment. The fact that a defendant's conduct falls within the purview of two criminal statutes is not unusual, and a statutory scheme which gives the prosecutor the option to choose between two properly defined offenses does not violate any constitutional rights of an accused. *123 See United States v. Batchelder, 442 U.S. 114, 99 S.Ct. 2198, 60 L.Ed.2d 755 (1979); State v. Valasquez, 376 So.2d 129 (La.1979). See also La.R.S. 14:4.
Excessiveness of Sentence
The $1,000 fines, plus costs, and the suspended jail terms are amply supported by the record. State v. Day, 391 So.2d 1147 (La.1980). The fines are reasonable in light of the obvious commercial purpose of the lewd exhibitions involved. Neither defendant contends that her financial situation will make the payment of the fine either impossible or exceedingly difficult. In addition, a two-year period of supervised probation, with a relatively severe sentence to be served (one year) in the event of noncompliance with the reasonable probationary conditions, is a sound deterrent to any possible temptation to engage again in commercial obscenity. The fact that other corporate or individual offenders may have also shared the responsibility for encouraging these women to engage in degrading behavior does not lessen defendants' blameworthiness for allowing themselves to be exploited.
Further, although the trial court apparently did not comply with La.C.Cr.P. Art. 894.1 (and no presentence report was filed with the record on appeal), the sentences are not apparently severe.[11] Defense counsel does not point to any factors in the circumstances of this offense or in the background of either young woman which would warrant a remand for compliance with Article 894.1. The sentences imposed appear to reflect a reasonable exercise of the trial court's discretion.
Defendants' convictions and sentences are affirmed.
CALOGERO, J., concurs.
DENNIS, J., concurs with reasons.
DIXON, C.J., and WATSON, J., dissent and assign reasons.
DENNIS, Justice, concurring.
I respectfully concur.
Unless the statute affects some aspect of speech, the state's power to regulate is not subject to First Amendment factors. For example, issues involving massage parlors and the regulation thereof are not speech cases, and should not be so analyzed. But as to the less obvious situations, there seems little possibility of avoiding a case by case determination of whether or not the particular activity has sufficient speech components to call into play a First Amendment analysis or whether the activity is so clearly conduct as to be outside the ambit of First Amendment protection. Such an inquiry, although not based on the Roth-Miller test for obscenity, may involve many similar elements, such as communicative intent as opposed to appeal to prurient interest, literary or artistic value, and the like. F.F. Schauer, The Law of Obscenity (1976). If it is determined that the activity has so few communicative elements as to be primarily conduct, then a state regulation of that conduct is valid as long as any incidental restriction on the speech elements is by the "least restrictive alternative." Miller, 413 U.S. 15, 26, 93 S.Ct. 2607, 2616, 37 L.Ed.2d 419; U.S. v. O'Brien, 391 U.S. 367, 88 S.Ct. 1673, 20 L.Ed.2d 672; California v. LeRoux, 409 U.S. 109, 93 S.Ct. 390, 34 L.Ed.2d 342.
The conduct involved in this case does not have a significant speech component, literary or artistic value, and it does appeal to the prurient interest. Moreover, there does not appear to be any lesser restrictive alternative state regulation available. Consequently, the strict obscenity standards should not be applied and it should not be required that all of the elements of the Miller test be satisfied before the conduct in question may be regulated.
DIXON, Chief Justice (dissenting).
I respectfully dissent.
The closets in this case were about as private as two people can get. They were *124 not public places nor places open to the public view. Therefore, there was no violation of R.S. 14:106 A(1).
There was, however, a violation of R.S. 14:106 A(2)(b), an offense with which the defendants were not charged.
WATSON, Justice, dissenting.
The majority finds no error in the state's failure to provoke the prior adversary hearing required by LSA-R.S. 14:106 F, concluding that this requirement only applies when the alleged obscenity takes the form of "printed matter, photographs and films". This construction disregards the specific phrasing of LSA-R.S. 14:106 F(1), which states that
"[N]o person, firm or corporation shall be arrested, charged or indicted for any violations of a provision of this Section until such time as the material involved has first been the subject of an adversary hearing under provisions of this Section... and, after such material is declared by the court to be obscene, such person, firm or corporation continues to engage in the conduct prohibited by this Section." (Emphasis added)
The use of the word "any" clearly subjects all obscenity allegations to the requirement of an adversary hearing. There is no ambiguity. The legislature did not distinguish among the possible statutory violations when it mandated a prior adversary hearing.
The majority concludes that the Ellwest Stereo Theatre is a "public place" within the scope of the newly defined and expanded scope of the crime of obscenity, despite the absence of any definition of the phrase "any public place or place open to the public view." Generally, streets, sidewalks and parks are considered to be public places open to the public view. See United States v. Grace, ___ U.S. ___, 103 S.Ct. 1702, 75 L.Ed.2d 736 (1983). Thus, the phrase "public place" would not necessarily include an enclosed privately owned structure open to public patronage. Therefore, the phrase is not sufficiently self-definitive to establish with certainty exactly where the conduct is prohibited.
"Every man should be able to know with certainty when he is committing a crime.... It would certainly be dangerous if the Legislature could set a net large enough to catch all possible offenders and leave it to the courts to step inside and say who could rightfully be detained and who should be set at large." U.S. v. Reese, 92 U.S. 214 at 221, 23 L.Ed. 563 at 566 (1875).
The majority finds that there is "no question" that the actions of the defendants were undertaken with an "intent to appeal to the prurient interest of and to arouse the sexual desire of the lone male viewer in the booth." The charge under LSA-R.S. 14:106 A(1) was that defendants willfully exposed certain parts of their bodies with the intent of arousing sexual desire. Under the statute, the state could also have charged that the defendants appealed to prurient interests or were patently offensive. Instead, the state assumed the burden of proving that defendants intended to arouse sexual desire.
The jury returned a verdict of guilty of attempted obscenity. Attempted obscenity under LSA-R.S. 14:27 is a specific intent crime. LSA-R.S. 14:10 defines specific criminal intent as "that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act."
Evidence of specific criminal intent is lacking here. Both arresting officers testified that they were not sexually aroused by the conduct of the defendants. Defendants limited their conversation with the officers to requests for additional money for various aspects of their performances. The state has not proven that defendants' specific intention was anything but mercenary.
The majority finds the defendants' conduct criminally obscene because of the commercial gain realized. LSA-R.S. 14:106 (A)(2) makes certain conduct criminal when motivated by "ensuing commercial *125 gain", but these defendants were not found guilty of violating LSA-R.S. 14:106 (A)(2).
I respectfully dissent.
NOTES
[1] The defendants' complaint that the state refused to supply them with NCIC information regarding prospective jurors is without merit. State v. Harvey, 358 So.2d 1224 (La.1978).
[2] There were 24 booths, of which 18 were for viewing movies and six were for viewing "nude dancing".
[3] After the officer entered the booth and inserted a coin, the screen raised and revealed a woman dressed in a black leotard outfit. When the officer upon her request gave her a two dollar "tip" to expose her pubic area, the woman unsnapped the bottom of her outfit and lifted it to her waist, displaying her pubic hair and vagina. After the screen lowered, the woman offered her patron an opportunity to move to the larger booth to see a more elaborate display. He raised the screen by inserting four tokens and then paid her five dollars through a hole in the full length glass window. The woman performed the same type of display, lying on her back and placing her legs against the glass, and then moving her pelvis up and down and back and forth, vividly revealing her vagina and pubic region to the officer.
[4] La.R.S. 14:106 A(1) provides:

"A. The crime of obscenity is the intentional:
"(1) Exposure of the genitals, pubic hair, anus, vulva, or female breast nipple in any public place or place open to the public view with the intent of arousing sexual desire or which appeals to prurient interest or is patently offensive."
[5] La.R.S. 14:106 F(1) provides:

"Except for those motion pictures, printed materials, and photographic materials showing actual ultimate sexual acts or simulated or animated ultimate sexual acts when there is an explicit, closeup depicture of human genital organs so as to give the appearance of the consummation of ultimate sexual acts, no person, firm, or corporation shall be arrested, charged, or indicted for any violations of a provision of this Section until such time as the material involved has first been the subject of an adversary hearing under the provisions of this Section, wherein such person, firm, or corporation is made a defendant and, after such material is declared by the court to be obscene, such person, firm, or corporation continues to engage in the conduct prohibited by this Section. The sole issue at the hearing shall be whether the material is obscene."
[6] Even in the case of films or printed materials, there is an exception for obvious "hard core pornography", about which there should be no legitimate question as to its prohibited nature.
[7] After the motion to quash was denied, defendants did not move to sever for separate trials based on a showing of prejudicial joinder.
[8] In State v. Dyer, 388 So.2d 374 (La.1980), this court held that the concept of "concealment", as used in the illegal carrying of weapon statute, included the endeavor to conceal and therefore that the Legislature must not have intended to proscribe the "attempt" to commit such offensebecause the completed offense was itself in the nature of an attempt. See also State v. Eames, 365 So.2d 1361 (La.1979), in which this court found that the Legislature in defining "inciting to riot" did not intend for the general attempt statute to apply to such offense, because the "incitement" was itself in the nature of an attempt.
[9] La.R.S. 14:106 A(2) provides:

"A. The crime of obscenity is the intentional:
* * * * * *
"(2) Participation or engagement in, or management, production, presentation, performance, promotion, exhibition, advertisement, sponsorship, or display of, hard core sexual conduct when the trier of fact determines that the average person applying contemporary community standards would find that the conduct, taken as a whole, appeals to the prurient interest; and the hard core sexual conduct, as specifically defined herein, is presented in a patently offensive way; and the conduct taken as a whole lacks serious literary artistic, political, or scientific value.
"Hard core sexual conduct is the public portrayal, for its own sake, and for ensuing commercial gain of:
"(a) Ultimate sexual acts, normal or perverted, actual, simulated or animated, whether between human beings, animals, or an animal and a human being; or
"(b) Masturbation, excretory functions or lewd exhibition, actual, simulated or animated, of the genitals, pubic hair, anus, vulva or female breast nipples; or
"(c) Sadomasochistic abuse, meaning actual, simulated or animated, flagellation, or torture by or upon a person who is nude or clad in undergarments or in a costume which reveals the pubic hair, anus, vulva, genitals, or female breast nipples, or in the condition of being fettered, bound, or otherwise physically restrained, on the part of one so clothed; or
"(d) Actual, simulated, or animated touching, caressing, or fondling of, or other similar physical contact with a pubic area, anus, female breast nipple, covered or exposed, whether alone or between humans, animals, or a human and an animal, of the same or opposite sex, in an act of apparent sexual stimulation or gratification; or
"(e) Actual, simulated, or animated stimulation of a human genital organ by any device whether or not the device is designed, manufactured, or marketed for such purpose."
[10] When the state decided to prosecute defendants under Section 106 A(1), defense counsel attempted to protect defendants from prosecution under an improper statute by filing a motion to quash, and the trial court correctly determined that the described conduct was not entitled to arguable First Amendment protection. The availability of the motion to quash is adequate protection for a defendant who is charged under an improper statute.
[11] The range of sentence for a first offender is a fine of not less than $1,000 or more than $2,500, or imprisonment for not less than six months or more than three years, or both.