459 So.2d 1285 (1984)
STATE of Louisiana
v.
Samilea JACOBSON and Elizabeth Strain.
No. 84 KA 0118.
Court of Appeal of Louisiana, First Circuit.
November 20, 1984.
Writ Denied February 8, 1985.
*1286 Ossie Brown, Dist. Atty., by Jeffrey Hollingsworth, Asst. Dist. Atty., Baton Rouge, for plaintiff-appellee.
Stephen L. Wanninger, Spedale, Sanders & Pennington, Baton Rouge, for defendant-appellant.
Before WATKINS, CRAIN and ALFORD, JJ.
WATKINS, Judge.
Samilea Jacobson and Elizabeth Strain were charged by a single bill of information, filed on September 24, 1981, with one count each of obscenity in violation of LSA-R.S. 14:106 by exposing their breast nipples in a public place or place open to public view with the intent of arousing sexual desire or appealing to prurient interest.[1] Defendants pleaded not guilty, waived trial by jury, and were tried by the Judge alone.[2] Each defendant was found guilty as charged and sentenced to imprisonment at hard labor for a period of one (1) year. Execution of the sentences was suspended and each defendant was placed on supervised probation for one (1) year with special condition that each pay a One Thousand ($1,000.00) Dollar fine and court costs.
From these convictions, defendants have brought the present appeal urging four assignments of error, as follows:
1. The trial court erred in not granting defendants' motion for acquittal.
2. The trial court erred in rendering a guilty verdict at the close of trial.
3. The trial court erred in denying motion in arrest of judgment.
4. The trial court erred in failing to hold LSA-R.S. 14:106A(1) unconstitutional on its face in violation of the United States Constitution and alternatively unconstitutional as applied to defendants in this case.
*1287 We affirm the convictions and sentences.
On September 4, 1981, Officers Thompson and Laird, both detectives with the Baton Rouge City Police Department, while within premises known as Fox Hunter Lounge located in the City of Baton Rouge, observed five different women perform on a stage. After discussing their observations regarding the manner in which the women had performed and their belief that the women were clad only in G-strings, Officers Thompson and Laird summoned additional police officers to the scene by radio.
The five women performers, which included defendants herein, were thereafter arrested and transported for booking. The present charges were brought based on this incident.
ASSIGNMENT OF ERROR NUMBERS 1 AND 2:
By means of these assignments, defendants contend that the evidence presented at trial was insufficient to support their convictions on charges of obscenity.
Assignment of Error Number 1 is based on denial of a motion of acquittal, sought by defendants at the close of the state's evidence. La.C.Cr.P. art. 778 provides that at a bench trial the court should enter a judgment of acquittal (either at the close of the state's evidence or of all the evidence) if the evidence presented is insufficient to sustain a conviction. Procedurally, Assignment of Error Number 2 raises sufficiency of evidence by formal assignment.
The applicable standard for reviewing sufficiency of the evidence, whether raised by formal assignment or motion for acquittal, is whether or not, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could conclude that the essential elements of the crime were proven beyond a reasonable doubt. La.C.Cr.P. art. 821; State v. Korman, 439 So.2d 1099 (La.App. 1st Cir.1983).
LSA-R.S. 14:106 defines the crime of obscenity in several ways. LSA-R.S. 14:106A(1), the subsection pertinent to the instant prosecution, provides:
A. The crime of obscenity is the intentional: (1) Exposure of the genitals, pubic hair, anus, vulva, or female breast nipples in any public place or place open to the public view with the intent of arousing sexual desire or which appeals to prurient interest or is patently offensive.
Evidence adduced at trial as to the appearance and conduct of defendants, on the night in question, is grounded on the testimony of Officers Dean Thompson and Sharon Laird.
Officer Thompson testified that after entering the Fox Hunter Lounge he and Officer Laird took seats next to the stage. From that vantage point, he observed five female dancers (later identified as the five women charged in the instant bill of information) individually come on to the stage, perform, and leave.
Officer Thompson described the appearance of each dancer as being clad only in a G-string as each of the dancer's breast nipples appeared visible to him. The lighting in effect during the performances was at times flashing with the dancers' breast area sometimes completely lit up. In addition, as a dancer performed, she would approach within a distance of one foot of a patron seated by the stage. Because of this proximity, at least one of the five dancers was observed to have been physically touched by a patron.
Detective Laird's testimony as to defendants' appearance and conduct on stage was in accordance with that of Officer Thompson.
After the arrival of other police officers summoned by radio, Officer Laird had further opportunity to view defendants in their dressing room. She testified that it was only then that she observed each of the dancers had a small amount of translucent surgical tape covering the breast nipple area.
Detective Robert Howle, one of the officers who responded to the radio summons, testified that upon arrival at the Fox Hunter Lounge he proceeded to close down the *1288 business activity. Thereafter, one of defendants approached him and explained that she had tape on her nipples. However, he testified that upon observing her breasts "it didn't appear to me that there was any tape on it."
The assignment of error that the evidence introduced at trial is not sufficient is based upon three contentions. The first is that the state failed to prove beyond a reasonable doubt that defendants intentionally exposed their breast nipples as defined by the statute. The second contention is that any such exposure was not proven beyond a reasonable doubt to have been with the intent of arousing sexual desire or appealing to prurient interests.[3] The final contention is that the state failed to prove beyond a reasonable doubt that the proscribed conduct occurred in a public place or place open to public view.
In presenting the argument with respect to the first contention, defendants urge that since their breast nipples were covered with translucent tape during the instant performances they were not exposed as proscribed by LSA-R.S. 14:106A(1).
LSA-R.S. 14:3 provides in pertinent part that "... all of its (the criminal code's) provisions shall be given a genuine construction, according to the fair import of their words, taken in their usual sense, in connection with the context, and with reference to the purpose of the provision."
The article under which defendants were prosecuted does not give a specific meaning for the word "expose" as it is there used. Webster's Third New International Dictionary, in discussing the many uses and meanings of the word, gives among others "to lay open to view" and "to deprive of concealment." Although we do not hold that the word "expose" as used in this statute is limited to meaning "exposed to sight" that is a construction generally in use and one which gives a fair import to the word.
Had the legislature intended to limit the proscribed appearance aspect of the statute to a bare, naked, or uncovered breast nipple it could have easily chosen such a word or words to express its intention.
At trial, each of the three police officers stated that the defendants' entire breasts, including breast nipples, were clearly visible when viewed during the on stage performances. We need not decide whether the exposure was due to complete bareness or the visibility provided by translucent tape coupled with lighting conditions.
Despite some semantical variance in the testimony of the three officers in describing what was seen, viewing the evidence in the light most favorable to the prosecution, as we are required, we conclude that the trier of fact could have found beyond a reasonable doubt that, during the performances in question, the defendants' breast nipples were exposed in violation of LSA-R.S. 14:106A(1).
Defendants also urge that, based on the evidence introduced at trial, the trier of fact could not have reasonably found that any exposure by defendants of their breast nipples was with the intent of arousing sexual desire or appealing to prurient interest.
Intent is a state of mind which need not be proven as a fact, but may be inferred from any facts or circumstances that may be shown to exist in a case, and thus is a matter for the trier of fact. LSA-R.S. 15:445; State v. Vines, 245 La. 977, 162 So.2d 332 (1964). State v. Antoine, 444 So.2d 334, (La.App. 1st Cir.1983). Moreover, specific intent is an ultimate legal conclusion to be resolved by the trier of fact. State v. Graham, 420 So.2d 1126 (La.1983).
As noted above, the officers who witnessed the performances testified as to defendants' conduct. The setting of the performances, the attire of the performers, *1289 the proximity of the patrons to the performers, and purposeful directing of attention to the breasts by flashing lights, depict circumstances from which a trier of fact could have found beyond a reasonable doubt that such conduct was with the intent of arousing sexual desire or appealing to prurient interest.
The fact that the performances were not shown to have produced sexual desire of the police officers or any other person is immaterial, for the statute does not require that sexual desire be actually aroused. All that is required under the statute is that there be the intent of arousing sexual desire. State v. Vines, supra.
Finally, defendants urge that the State failed to prove that the proscribed conduct occurred "in any public place or place open to the public view" as required by LSA-R.S. 14:106A(1).
Section 106A(1) was amended in 1979. The legislative intent of Act 252 of 1979 was made clear in the Act's title, which states that the purpose of the amendment was "to include within the scope of the statute obscenity which takes place in any enclosed or unenclosed area operated to receive or accommodate the public or people at large." In view of the clear purpose of the amendment, we conclude that sufficient evidence was presented at trial from which the trier of fact could have found that the Fox Hunter Lounge was a "public place" within the contemplation of this statute.[4]
Accordingly, these assignments lack merit.
ASSIGNMENTS OF ERROR NUMBERS 3 AND 4:
In these assignments, defendants argue that LSA-R.S. 14:106A(1) is unconstitutional on its face in violation of the United States Constitution, and alternatively unconstitutional as applied to the instant prosecution.[5]
Specifically, defendants urge that LSA-R.S. 14:106A(1) is not only vague but, also, goes beyond the permissible scope of Miller v. California, 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419, reh. denied, 414 U.S. 881, 94 S.Ct. 26, 38 L.Ed.2d 128 (1973) by adding "exposure ... with the intent of arousing sexual desire".
In State v. Walters, 440 So.2d 115 (La. 1983), defendants challenged the constitutionality of LSA-R.S. 14:106A(1) as vague, overbroad, and impermissibly restrictive of their freedom of expression under the First Amendment.
In addressing the argument of vagueness the Louisiana Supreme Court noted the following:
The statute required the state to prove that the offender acted with a specific intent to arouse sexual desire, either of the actor or of the viewer. The requirement of a state of mind indicating an active desire to arouse sexual appetite could not be more clearly defined. See La.R.S. 14:10. Virtually the same words are used in La.R.S. 14:81 to define indecent behavior with juveniles, and its constitutionality has never effectively been challenged. [citations omitted] The phrase "arousing sexual desire" is certainly one which gives an ordinary person of reasonable intelligence fair notice of the proscribed conduct. See State v. Jackson, 404 So.2d 952 (La.1981). 440 So.2d at 121.
The alleged vagueness of the term "exposed" was not directly at issue in State v. Walters; however, legislators are not required to effectively nullify the purpose of legislation by the use of specific terms which would afford loopholes through which many could escape. The *1290 United States Supreme Court has held that statutes are not invalid as vague simply because it is difficult to determine whether certain marginal offenses fall within their language.[6] If the general class of offenses to which a statute is directed is plainly within its terms, the statute will not be struck down because hypothetical cases could be put where doubt might arise.[7]
In State v. Walters, the Louisiana Supreme Court squarely addressed the applicability of the test for obscenity announced by the United States Supreme Court in Miller v. California (a case involving printed materials and photographs) to a prosecution proceeding under LSA-R.S. 14:106A(1). Relying on footnote 8 of Miller v. California[8] the Court in State v. Walters noted that Miller did not limit prosecution for "live" lewd exhibitions of the genitals in an offensive and "unartistic" manner to statutes which incorporate the Miller standards. State v. Walters, supra, 440 So.2d at 122.[9]
There is no evidence that the performances in the present case possessed any redeeming feature of art.
We, therefore, conclude that prosecution of defendants' conduct under LSA-R.S. 14:106A(1) did not impermissibly restrict their First Amendment rights of freedom of expression as defendants contend.
Defendants' further argument that LSA-R.S. 14:106A(1) is unconstitutional as applied to the instant facts is also without merit, for the reasons given above. Accordingly, Assignments of Error Nos. 3 and 4 are without merit.
ERROR PATENT:
We do note ex proprio motu an error patent on the face of the record which requires that the sentences herein imposed be amended. See, La.C.Cr.P. arts 882 and 920.
The 1977 legislature amended LSA-R.S. 14:106A(1) in two acts with divergent results. Act 97 established the penalty for obscenity as follows:
"G. (1) Whoever commits the crime of obscenity shall be fined not less than one hundred dollars nor more than one thousand dollars, or imprisoned in the parish prison for not more than one year, or both.
"(2) When a violation of Paragraph (1), (2), or (3) of Subsection A of this Section is with or in the presence of any unmarried person under the age of seventeen years, the offender shall be fined not more than ten thousand dollars and shall be imprisoned at hard labor for not less than two years nor more than ten years, without benefit of parole, probation, or suspension of sentence."
In contrast, Act 717 enacted the following penalty provision:
"B. Whoever commits the crime of obscenity shall be fined not less than one hundred dollars nor more than one thousand dollars, or imprisoned for not more than one year with or without hard labor, or both.
"When a violation of Paragraphs (1), (2), or (3) of Subsection A of this Section is with, or in the presence of, an unmarried person under the age of seventeen years, the offender shall be fined not more than two thousand dollars, or imprisoned *1291 for not more than five years with or without hard labor, or both."
In State v. Entertainment Specialists, Inc., 386 So.2d 653 (La.1980), the Supreme Court addressed the issue of conflicting punishments for the same crime. In applying the principles of conflicting punishments, the Court found that the statute must be construed in order to afford defendant the advantage of the lesser punishment. Accordingly, defendant therein was held to have been convicted of a misdemeanor as provided by Act 97.
The instant offenses occurred on September 4, 1981 and any applicable penalty was governed by Act of 97.[10] Defendants could have each been sentenced to one year imprisonment in the parish prison and fined not more than one thousand dollars; however, it was error to sentence each defendant to imprisonment for one year at hard labor.
Each sentence is amended to provide that it shall be served in the parish prison. In all other respects each conviction and sentence is affirmed.
CONVICTION AFFIRMED, SENTENCE AFFIRMED AS AMENDED.
NOTES
[1] Prosecution proceeded exclusively under LSA-R.S. 14:106A(1).
[2] Trial on the merits began on March 23, 1982; however, verdict was not rendered on that date. An out of time motion to quash was filed on June 2, 1982, argued and denied on June 22, 1982. A stay of proceedings was granted by the trial court pending disposition of a writ application seeking review of denial of motion to quash.

The Louisiana Supreme Court granted the writ solely for the purpose of transferring to the Court of Appeal for consideration. See State v. Jacobson, 417 So.2d 374 (La.1982). Court of Appeal First Circuit, No. 82 KW 0555, denied the writ on July 19, 1982 noting that defendant had an adequate remedy by review in event of conviction. Guilty verdict was rendered, thereafter, by the trial court on February 7, 1983.
[3] Under LSA-R.S. 14:106A(1), the state could have also charged "or is patently offensive" but elected not to do so.
[4] Each of the three police officers who testified at trial was able to enter the Fox Hunter Lounge where the presence of other patrons was noted during defendants' performances.
[5] By means of Assignment of Error Number 3 defendants sought review of denial of motion in arrest of judgment. That motion was grounded on La.C.Cr.P. art 859(2) urging that the offense charged is not punishable under a valid statute. Assignment of Error Number 4 raised the constitutionality of LSA-R.S. 14:106A(1) by formal assignment.
[6] See United States v. National Dairy Products Corp. 372 U.S. 29, 83 S.Ct. 594, 9 L.Ed.2d 561 (1963).
[7] See United States v. Harriss, 347 U.S. 612, 74 S.Ct. 808, 98 L.Ed. 989 (1954).
[8] Although live performance was not at issue in Miller v. California, the Court noted at footnote 8 that:

Although we are not presented here with the problem of regulating lewd public conduct itself, the States have greater power to regulate nonverbal, physical conduct than to suppress depictions or descriptions of the same behavior. 413 U.S. at 26, 93 S.Ct. at 2616.
[9] In State v. Amato, 343 So.2d 698 (La.1977), a case involving review of works and materials, the Court noted that although the "female breast nipple" was not one of the examples of human anatomy mentioned by the United States Supreme Court in Miller v. California it was sufficiently similar. Depictions of conduct displaying that portion of human anatomy could likewise be regulated.
[10] The penalty provision of LSA-R.S. 14:106 was next amended and reenacted by Acts 1981. No. 159 § 1 effective September 11, 1981.