WATKINS, Judge.
Defendant, Michael Wiklund, was charged by the Tangipahoa Parish Grand Jury in a two count indictment with aggravated rape (count one) and aggravated crime against nature (count two), violations of LSA-R.S. 14:42 and 89.1, respectively. At trial, after the jury was selected and sworn and prior to the state’s opening statement, count two was severed from the indictment on motion of the state. The jury convicted defendant as charged in count one. Subsequently, the trial court sentenced defendant to life imprisonment at hard labor without benefit of probation, parole or suspension of sentence. Defendant appeals, urging three assignments of error, as follows:
1. The trial court erred by qualifying the eight-year-old victim as a witness.
2. The trial court erred by allowing hearsay testimony to be admitted into evidence.
3. The trial court erred by admitting state exhibit S-l into evidence and permitting witnesses to identify the exhibit. The instant offense occurred on April 3,
1985, during daylight hours. The victim, a girl, was seven years old at the time of the offense. According to the victim, defendant had been living with her and her mother for about three weeks prior to the offense.
Fred Clark saw defendant and the victim together in defendant’s car at about 2:30 p.m. on the day in question. At approximately 3:30 p.m., Cathleen Hanson saw defendant walking with the victim along a road east of Ponchatoula; and, at about 3:30 p.m., Mildred Cannino was traveling east on La. Hwy. 22 when she saw the victim sitting on the side of the highway. Cannino stopped and walked up to the child. The child was injured, in shock, wobbly and not comprehensible. The victim’s *252 dress had patches of blood on the back, and the sandals she was wearing were dirty. The child’s legs were dirty and scratched from the knees down. She had blood about her face, a blackened right eye, and red marks on her face.
The record reflects that, after Cannino found the child, the police were contacted. Shortly after authorities discovered the instant offense, the victim was placed in a certified foster home.
Drs. Donald Thibodeaux, Kathleen McDonald and James Pramberg physically examined the victim on April 3,1985, at Lallie Kemp Charity Hospital. Dr. Thibodeaux’s examination was conducted separately from an examination that Dr. McDonald undertook in the presence of Dr. Pram-berg. Dr. McDonald’s examination revealed that the victim had sustained bruises to the side of her right eye, to her left temple area, and to her left ear. The victim had dried blood in both of her nostrils; mud covering her hands, arms, and legs; and scratches on the back of her right leg, on her inner thighs and on her buttocks. More significantly, an examination of the victim’s genitalia by Drs. Thibodeaux and McDonald revealed that the victim had dried blood over the genitalia area and had sustained a large tear to the posterior portion of her vagina, requiring surgical repair. According to Dr. Thibodeaux, the tear was the most severe he had ever seen in examining approximately one hundred females that had allegedly been raped. Dr. Thibodeaux testified that his examination and observations of the victim were consistent with a finding that the victim had been raped. Based upon the tear to the posterior of the child’s vagina and the dislocation of the victim’s cervix, Dr. McDonald stated that it appeared the child had been raped.
The victim testified that, on the day in question, defendant “hurt” her while they were in the woods. The record reflects that, during her testimony, the prosecutor presented the victim with a male and a female anatomical doll. Using the dolls, the victim demonstrated how defendant loosened the front of his pants, made her lie down, took off her underpants and got on top of her. She stated that it hurt her and that she cried. She stated that defendant turned her over and got on top of her again, and he then turned her over again and got back on top of her. She testified that defendant kissed her, called her names, and hit her in the eye.
Several days after the offense, on April 5, defendant was arrested in Angola, Indiana. Shortly thereafter, Louisiana law enforcement officers went to Indiana, assumed custody of defendant, and transported him back to Louisiana.
ASSIGNMENT OF ERROR NO. ONE:
By means of this assignment, defendant contends that the trial court erred by finding that the victim, who was eight years old at the time of trial, was competent to testify at trial.[1]
LSA-R.S. 15:469 provides for the determination of the competency of a witness, as follows:
Understanding, and not age, must determine whether any person tendered as a witness shall be sworn; but no child less than twelve years of age shall, over the objection either of the district attorney or of the defendant, be sworn as a witness, until the court is satisfied, after examination, that such child has sufficient understanding to be a witness.
The determination by the trial court that a child witness is competent to testify is based not only upon the child’s answers to questions testing his understanding but also on the child’s overall demeanor on the witness stand. State v. Humphrey, 412 So.2d 507, 516 (La.1981). For that reason, the court is vested with wide discretion in determining competency; and, on appeal, the court’s ruling is entitled to great weight. State v. Noble, 342 So.2d 170, 172 (La.1977). A ruling by the trial court that *253 a witness is competent to testify will not be disturbed in the absence of manifest error. State v. Amaud, 412 So.2d 1013, 1018 (La. 1982).
The record reflects that, in chambers, the trial court questioned the victim (who was then eight years old) in the presence of the minute clerk, the court reporter and counsel for the state and defendant in order to determine the child’s competency to testify as a witness. During that questioning, the child answered that she knew the meaning of telling the truth and telling a lie. The court then, through a variety of additional questions, elicited responses from the child showing that she in fact understood the difference between truth and lies. The child also stated that she knew what it means to solemnly swear to tell the truth, the whole truth and nothing but the truth; and she promised the court she would tell the truth. Accordingly, we find no manifest error in the trial court's determination that the victim was competent to testify.
This assignment lacks merit.
ASSIGNMENT OF ERROR NO. TWO:
By means of this assignment, defendant contends that the trial court erred by admitting hearsay testimony of Dr. Donald Thibodeaux, which recounted a statement that the victim made to the doctor inculpating defendant. Defendant concedes that the original complaint of a rape victim is an exception to the hearsay rule; however, he asserts that, in the absence of evidence showing that the victim’s statement was her original complaint, admission of the doctor’s testimony constituted error.
In State v. Middlebrook, 409 So.2d 588, 590 (La.1982), the Louisiana Supreme Court stated the following:
This court has long recognized an exception to the hearsay rule allowing admission of the early complaints of rape victims. At times, the court has characterized these as the “first complaints of rape victims” constituting res gestae exceptions to the hearsay rule. See State v. Adams, 394 So.2d 1204 (La.1981); State v. Brown, 302 So.2d 290 (La.1974). In other cases, the court has referred to such statements simply as “early complaints of rape victims” and ruled that they were admissible as such. See State v. Hatcher, 372 So.2d 1024 (La.1979); State v. Elzie, 351 So.2d 1174 (La.1977). When there is no unexplained lapse of time between the rape and the victim’s complaint, and when the utterance is spontaneous, the person to whom the complaint was made is allowed to repeat the complaint in court.
Dr. Thibodeaux testified that he began his examination of the victim at about 5:00 p.m. on April 3, 1985. The victim was scared and was lying on a stretcher at the time. A police officer and the victim’s mother presented the victim to him. Over defense counsel’s objection grounded on hearsay, Dr. Thibodeaux recounted the content of the statement the victim apparently made to him during the examination. The testimony repeating the content of the statement was as follows: The victim’s stepfather took her into the woods. There, while the victim was lying on the ground in mud, the stepfather placed his penis in her mouth, vagina and rectum. After she and her stepfather left there in a car, the car ran out of gas. Later the victim’s mother picked the victim up at a house where the stepfather left her.
Lt. Learline Gueldner of the Tangipahoa Parish Sheriff's Department testified that she obtained statements from the victim implicating defendant in the rape. However, there was no evidence as to whether or not these statements preceded the victim’s statement to Dr. Thibodeaux. Defendant relies upon the absence of such evidence to buttress his claim that the doctor’s testimony repeating the content of the victim’s statement was improperly admitted into evidence.
Under these facts and circumstances, we are unable to determine whether or not the victim’s statement to Dr. Thibodeaux was the first reasonable opportunity presented to the victim to make her revelations regarding the nature of the instant offense and the identity of its perpetrator. Cf State v. Anderson, 526 So.2d 499, 502 (La. App. 1st Cir.1988), writ denied, 537 So.2d 1160 (La.1989). However, even if we were *254 to conclude that the admission of Dr. Thi-bodeaux’s testimony repeating the victim’s statement to him was erroneous, the error was harmless. The allegedly improperly admitted testimony was merely corroborative and cumulative of other properly introduced evidence. See State ¶. Parker, 425 So.2d 683, 694 (La.1982), on rehearing; State v. Hookfin, 476 So.2d 481, 489 (La. App. 1st Cir.1985).
This assignment, therefore, lacks merit. ASSIGNMENT OF ERROR NO. THREE:
By means of this assignment, defendant claims that the trial court erred by admitting state exhibit S-l (photographs of the victim) into evidence and by allowing witnesses to identify the exhibit. Citing State v. Gray, 351 So.2d 448 (La.1977), defendant argues only that the probative value of S-l was outweighed by the exhibit’s potential prejudicial effect on the jury.
In Gray, the court reviewed photographs of a child rape victim’s lower anatomy taken during a physical examination made after the rape. The Gray court concluded that the probative value of the photographs outweighed their potential prejudicial effect on the jury and that the photographs were properly admitted into evidence. In reaching its conclusion, the court stated the following:
[The photographs] were introduced as corroborative evidence depicting numerous insect bites on the victim’s legs and thighs, the swelling and redness of the labia majora and labia minora, the discoloration of the hymen and the small laceration below the vagina, extending to the rectum. The photographs also showed the accumulation of soil and grass particles found on the victim’s pelvic perineum. While oral testimony indicated the presence of these conditions, it cannot be disputed that the photographs were highly probative in demonstrating the location and extent of the injuries described. In addition, the issue of sexual penetration was hotly contested at trial and the photographs were probative in that respect.
351 So.2d at 458.
In the instant case, state exhibit S-l is a color photograph which depicts the victim’s head and right arm being held by another individual. It shows some redness and other discoloration to the victim’s face. Photographs which illustrate any fact, shed light upon any fact or issue in the case, or are relevant to describe the person, place or thing depicted are generally admissible. State v. Kirkpatrick, 443 So.2d 546, 555 (La.1983), cert. denied, 466 U.S. 993, 104 S.Ct. 2374, 80 L.Ed.2d 847 (1984). State exhibit S-l was primarily utilized during the testimony of state witnesses to identify the victim. Clearly, the probative value of this photograph outweighed any prejudicial effect it might have had on the jury. Hence, it was properly introduced into evidence.
This assignment lacks merit.
Considering the foregoing, the conviction and sentence are affirmed.
CONVICTION AND SENTENCE AFFIRMED.

. Defendant correctly pointed out in his brief that the appellate record (originally) did not include a transcript of the trial court’s examination of the victim’s competency. However, pursuant to this Court’s order, the record has been completed by the filing of the necessary transcript.