554 So.2d 1281 (1989)
STATE of Louisiana
v.
David Glenn ODOM.
No. 89 KA 0163.
Court of Appeal of Louisiana, First Circuit.
December 19, 1989.
*1282 Louise Draper, Asst. Dist. Atty., Covington, for State.
Sam Collett, Bogalusa, for Odom.
Before COVINGTON, C.J., and WATKINS and SHORTESS, JJ.
WATKINS, Judge.
Defendant, David Glenn Odom, was charged by a single bill of information with two counts of obscenity committed in the presence of an unmarried person under the age of seventeen years, violations of LSA-R.S. 14:106. Defendant was tried by a jury which convicted him of both counts as charged. Subsequently, the trial court sentenced defendant to imprisonment at hard labor for a term of three years on each count. The court ordered that two years of each sentence be served without benefit of parole, probation, or suspension of sentence and that the sentences run concurrently. Defendant has appealed, urging six assignments of error, to wit:
1. The jury's verdicts are contrary to the law and the evidence.
2. The trial court erred by allowing testimony of "Victim One's" father as an exception to the hearsay rule under the first report exception to the hearsay rule.
3. The trial court erred by allowing "Victim One's" father to testify as to alleged disclosures the victim(s) made to him under the first report exception to the hearsay rule.
4. The statute upon which defendant's convictions are based is unconstitutionally vague or is otherwise unconstitutional and in violation of the due process clauses of the Federal and State Constitutions.
5. The statute upon which defendant's convictions are based had no application in the instant case since local obscenity legislation was in effect and governed all criminal conduct relative to obscenity and this defendant.
6. Defendant's sentences are excessive and violate the constitutional guarantees against cruel and unusual punishment.
Assignments of error numbers two and six were not briefed on appeal and, therefore, *1283 are considered abandoned. Uniform RulesCourts of Appeal, Rule 2-12.4.
The record reflects that the instant offenses involved separate incidents which occurred approximately during August of 1987 in Bogalusa, Louisiana. The victims of the offenses were teenage girls to whom we will refer in this opinion as "Victim One" (as to count I) and "Victim Two" (as to count II). At the time of the incident involving Victim One, she was fourteen years old; and at the time of the incident involving Victim Two, she was fifteen years old. Each victim was unmarried at the time. Victim One was with her four-year-old cousin when the offense in count I occurred; and Victim Two was alone when the crime in count II was committed.
At the time of the offenses, defendant lived in a house across the street from the home of Victim One. At the time in question, Victim Two lived in the same neighborhood around the block from the street on which defendant and Victim One lived.
In each of the incidents, the victim heard defendant knock on his bedroom window which faces the house of Victim One. Upon hearing defendant knocking on the window, each victim looked at the window and observed defendant standing nude in the window with his genitals in view.
About three or four weeks after defendant had exposed himself to her, Victim One told her father what defendant had done. Victim One's father then spoke to Victim Two's mother and Victim Two; at that time, Victim Two disclosed the incident in which defendant had exposed himself to her.
After the victims made their disclosures to Victim One's father, the police were contacted. Defendant's arrest followed.
ASSIGNMENT OF ERROR NO. ONE:
By means of this assignment, defendant contends that the jury's verdicts are contrary to the law and the evidence. He argues that there was no evidence that anything he allegedly did was for the purpose of arousing sexual desire, appealed only to the prurient interest, or was patently offensive. Defendant asserts that, because his alleged acts occurred inside his own home, the acts were not in any public place or place open to the public view.
Initially, we note that the record does not reflect that defendant filed a motion for post-verdict judgment of acquittal. In order to challenge a conviction on the basis of insufficiency of the evidence, defendant should have proceeded by way of a motion for post-verdict judgment of acquittal. See LSA-C.Cr.P. art. 821. Nevertheless, we will consider a claim of insufficiency of the evidence which has been briefed pursuant to a formal assignment of error.
In reviewing the sufficiency of the evidence to support a conviction, an appellate court in Louisiana is controlled by the standard enunciated by the United States Supreme Court in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). That standard is that the appellate court must determine that the evidence, viewed in the light most favorable to the prosecution, was sufficient to convince a rational trier of fact that all of the elements of the crime had been proved beyond a reasonable doubt. State v. Captville, 448 So.2d 676 (La.1984). The standard has been codified in LSA-C.Cr.P. art. 821.
When circumstantial evidence is used to prove the commission of the offense, LSA-R.S. 15:438 mandates that, "assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence." This statutory test is not a purely separate one from the Jackson constitutional sufficiency standard. Ultimately, all evidence, both direct and circumstantial, must be sufficient under Jackson to satisfy a rational juror that the defendant is guilty beyond a reasonable doubt. Due process requires no greater burden. State v. Rosiere, 488 So.2d 965 (La.1986).
LSA-R.S. 14:106 A.(1) provides:
The crime of obscenity is the intentional:
Exposure of the genitals, pubic hair, anus, vulva, or female breast nipples in any public place or place open to the public view with the intent of arousing *1284 sexual desire or which appeals to prurient interest or is patently offensive.
Victim One testified that at about 4:00 p.m. on the day in question, while she was standing outside her home on the sidewalk on the side of the street opposite defendant's home, she heard defendant knock on his bedroom window. She looked up and saw defendant standing in the window. Defendant was about thirty feet away from her. He was nude. She saw defendant's body from his knees to his head. She saw defendant's genitals. When Victim One proceeded onto her front porch to go into the house, defendant yelled, "Don't go in." Victim One said nothing, went into her home with her four-year-old cousin, locked the doors and stayed inside.
Victim Two testified that on the day in question, "near about dark," she was in front of Victim One's house looking for her little brother. While she was there, standing in the street, she heard defendant knocking on the window of the house across the street from Victim One's house. When she looked, she saw defendant standing in the window. At that time she was in the street at a distance of about twenty-five to thirty feet from the window which faced the street. She could see defendant from the top of his head to his knees. He was standing naked in the window, and she could see defendant's genitals. She viewed defendant for about five seconds. She then proceeded on her own way. After she found her brother, she went home. According to Victim Two, defendant did not speak to her, but she clearly heard him knocking on the window.
The fact that the exposures were from a location inside defendant's home is of no moment under these facts. Herein, the location was clearly within the class of places contemplated by the phrase "place open to public view" used in LSA-R.S. 14:106 A.(1). Cf. State v. Magee, 517 So.2d 464 (La.App. 1st Cir.1987) and State v. Roy, 458 So.2d 1040 (La.App. 3d Cir.1984), writ denied, 462 So.2d 1262 (La.1985).
It is well established that a victim's testimony is sufficient to establish the elements of an offense. State v. Magee, 517 So.2d at 466. After viewing the evidence in the light most favorable to the prosecution, we conclude that any rational trier of fact could have found (and the jury in this case obviously did find) that the state proved as to each count beyond a reasonable doubt and to the exclusion of any reasonable hypothesis of innocence that defendant intentionally exposed his genitals in a place open to the public view, that the exposure was with the intent of arousing sexual desire, that the exposure appealed to prurient interest or that the exposure was patently offensive. See State v. Roy, 458 So.2d 1040.
This assignment lacks merit.
ASSIGNMENT OF ERROR NO. THREE:
By means of this assignment, defendant contends that the trial court erred by allowing Victim One's father to testify as to the alleged disclosures the victim(s) made to him under the first report exception to the hearsay rule. Defendant asserts that the first report was actually made to Victim One's brother whose age is not disclosed in the record and that the time and circumstances of the alleged first reports do not show that the reports were reliable and the products of shocking episodes.
Victim One's father testified that in August of 1987, he was living with his wife and three children, Victim One and his eleven and thirteen-year-old sons. After Victim One's father overheard one of his sons make a statement, Victim One's father questioned Victim One and, as a result thereof, Victim One disclosed to her father the incident in which defendant exposed himself to her.
The testimony of Victim One's father does not reveal the content of the statement Victim One's brother made which prompted their father's questioning of Victim One. However, state exhibit one introduced at trial, a transcript of a statement made by Victim One on September 22, 1987, at the Bogalusa Police Department in the presence of her father and Officers Dorman Pritchard and Glenn McClendon, indicates that the statement which her father *1285 overheard pertained to the incident involving Victim Two.[1]
In any event, over objection of defense counsel, Victim One's father recounted the disclosure which his daughter made to him. State exhibit one reflects that the disclosure was made on September 22, 1987, the same date Victim One made the statement which was the subject of the transcript, i.e., state exhibit one. According to Victim One's statements in state exhibit one, the incident in which defendant exposed himself to her had occurred about three weeks prior to September 22. Victim One's father initially testified that the incident had occurred about a month prior to its disclosure to him. However, in recounting the disclosure his daughter had made to him, Victim One's father stated that she told him the incident had happened three or four weeks before the disclosure. In her trial testimony, Victim One also stated that the incident occurred about three or four weeks before she told her father about it.
The testimony of Victim One's father indicates that when he questioned his daughter she initially did not want to disclose the incident because she was afraid that he might "take more action than just being upset." Victim One's father further testified that Victim One was very upset, nervous and scared when she made the disclosure to him and that she presently does not like to talk about the incident.
Victim One testified that the incident in which defendant exposed himself to her frightened her "a little" and that she was scared when it happened. However, she testified that she does not think about the incident and that it does "not really bother [her] at all." victim One explained that she did not tell anyone about the incident until about three or four weeks after its occurrence because she was afraid to do so. She stated that she was afraid of her father's reaction to such a disclosure, i.e., that he might kill defendant.
Although defendant's arguments in reference to this assignment appear to relate to the disclosures both victims made to Victim One's father, the record reflects that Victim One's father's testimony recounted only the content of the disclosure his own daughter made to him. During the testimony of Victim One's father, he did state that, following his daughter's disclosure to him, he went to the home of Victim Two where he first spoke to Victim Two's mother and then to Victim Two in the presence of her mother. Victim One's father stated that, at that time, Victim Two "admitted what had happened to her." At that juncture of the testimony of Victim One's father, defense counsel objected on hearsay grounds when the prosecutor was apparently about to question Victim One's father as to the content of the disclosure made by Victim Two. The trial court ruled that the matter of Victim Two's disclosure could be taken up with the testimony of Victim Two's mother. The record, however, reflects that Victim Two's mother did not testify at trial and that Victim One's father did not testify as to the content of Victim Two's disclosure.
The testimony of Victim One's father repeating what Victim One told him constitutes hearsay because the testimony is an out of court, unsworn statement of a person offered for the truth of its content. State v. Elzie, 351 So.2d 1174 (La.1977). However, in prosecutions for sex offenses, the original complaint of a young child is admissible when the particular facts and circumstances of the case indicate that it was a product of a shocking episode and not a fabrication. State v. Prestridge, 399 So.2d 564 (La.1981); State v. Simmons, 484 So.2d 894 (La.App. 1st Cir.1986).
In State v. Garay, 453 So.2d 1003, 1007 (La.App. 4th Cir.1984), our brothers of the Fourth Circuit stated:
A very young child raped by an adult standing in the position of parent, caretaker or friend cannot be expected to immediately come forward with a complete and exact report of the event. The courts have recognized that the child may be unable to speak about the incident until she considers herself safely in the presence of a compassionate adult *1286 whom she can trust. Because the child has no clear understanding of what has been done to her, her "original complaint" often consists of responses to the questioning of a patient, persistent adult who draws the child's story from her.
Considering the particular facts and circumstances of the instant case, Victim One's waiting three to four weeks until she made her disclosure to her father is of no consequence. Notwithstanding Victim One's testimony that she does not think about the incident and that it does "not really bother [her] at all," in light of the nature and circumstances of the incident, Victim One's testimony reflects that she was frightened by the incident and feared her father's reaction to her disclosure of the incident. Considering her father's testimony as to Victim One's demeanor at the time of the disclosure and her reluctance to talk about the incident, we conclude that Victim One's complaint to her father was a spontaneous reaction to a sufficiently startling event and not the result of reflective thought. Accordingly, the testimony of Victim One's father repeating the disclosure of Victim One relative to the incident involving her constituted the original or first complaint of Victim One. Therefore, the trial court's ruling was proper. Moreover, even assuming, arguendo, that the admission of the testimony was erroneous, the error was harmless. The allegedly improperly admitted testimony was merely corroborative and cumulative of other properly introduced evidence. See State v. Parker, 425 So.2d 683 (La.1982), on rehearing; State v. Wiklund, 546 So.2d 250 (La.App. 1st Cir.1989), writ denied, 552 So.2d 378 (La.1989).
This assignment, therefore, lacks merit.
ASSIGNMENTS OF ERROR NOS. FOUR AND FIVE:
In assignment of error five, defendant contends that the statute upon which his convictions are based (LSA-R.S. 14:106 A.(1)) had no application in the instant case since local obscenity legislation (a Bogalusa City Ordinance) was in effect and governed all criminal conduct occurring in Bogalusa relative to obscenity. Defendant bases his contention on his construction of the provisions of LSA-R.S. 14:106 E. Under defendant's construction of LSA-R.S. 14:106 E., once a local ordinance defining obscenity is enacted and takes effect, the ordinance preempts application of the state definition of obscenity to any allegedly obscene conduct occurring in the locality which adopted the ordinance; under those circumstances, any prosecution for such conduct can be based only on the local definition of obscenity.
In assignment of error four, defendant contends that the statute upon which defendant's convictions are based (LSA-R.S. 14:106 A.(1)) is unconstitutionally vague or is otherwise unconstitutional and in violation of the due process clauses of the Federal and State Constitutions. In support of his assertion, defendant submits that, LSA-R.S. 14:106 E. permits local regulation of obscenity which does not exceed the scope of the regulatory prohibitions in the state statute. Therefore, a local definition of obscenity which is less prohibitive or less restrictive to the accused than the state definition of the crime may be enacted. Presumably as an alternative argument to defendant's contentions in assignment five, defendant claims that, once such a local, less prohibitive or less restrictive definition takes effect in a locality, and a person is accused of allegedly obscene conduct, he is denied the adequate notice to which he is entitled under La. Const. Art. I, § 2, as to which law will govern his conduct, i.e., the more prohibitive or more restrictive state law or the less prohibitive or less restrictive local ordinance. Defendant asserts that the Bogalusa City Ordinance in effect at the time of the instant incidents defined obscenity in a less prohibitive or less restrictive manner than the state definition.

STATUTORY CONSTRUCTION
LSA-R.S. 14:106 E. provides as follows:
This Section does not preempt, nor shall anything in this Section be construed to preempt, the regulation of obscenity by municipalities, parishes, and consolidated city-parish governments;

*1287 however, in order to promote uniform obscenity legislation throughout the state, the regulation of obscenity by municipalities, parishes, and consolidated city-parish governments shall not exceed the scope of the regulatory prohibitions contained in the provisions of this Section.
LSA-R.S. 14:3 provides that:
The articles of this Code cannot be extended by analogy so as to create crimes not provided for herein; however, in order to promote justice and to effect the objects of the law, all of its provisions shall be given a genuine construction, according to the fair import of their words, taken in their usual sense, in connection with the context, and with reference to the purpose of the provision.
Contrary to defendant's argument that adoption of a local ordinance defining the crime of obscenity preempts or precludes his prosecution under the provisions of LSA-R.S. 14:106 A.(1), we find that the provisions of LSA-R.S. 14:106 E. do not prohibit the instant prosecution. Utilizing the general rule of statutory construction in LSA-R.S. 14:3, we conclude as follows. LSA-R.S. 14:106 E. clearly provides that the provisions of LSA-R.S. 14:106 do not preempt regulation of obscenity by municipalities, parishes, and consolidated city-parish governments; however, the statute specifically limits local regulation of obscenity by providing that such regulation shall not exceed the scope of the state regulatory prohibitions contained in LSA-R.S. 14:106.[2] LSA-R.S. 14:106 E. does not preempt or preclude prosecution for obscenity under state law for conduct which occurs in a locality which has adopted a local ordinance. Under those circumstances, wherein such a local ordinance has been adopted, we conclude that it is immaterial that the same conduct is punishable by both state law and the local ordinance in the concurrent exercise of police power.[3] Cf. State v. Suire, 319 So.2d 347 (La.1975). We reach the foregoing conclusion notwithstanding that the clear wording of LSA-R.S. 14:106 E. does not prohibit enactment of a local ordinance which might define the crime of obscenity differently than the state definition of the crime, i.e., by defining obscenity less prohibitively or less restrictively in accordance with the specific limits set forth in LSA-R.S. 14:106 E. Thus, the adoption of a local ordinance by the City of Bogalusa did not preclude the instant prosecution.[4]

ALLEGED UNCONSTITUTIONALITY OF LSA-R.S. 14:106 A.(1)
The constitutional guarantee that an accused shall be informed of the nature and cause of the accusation against him requires that a penal statute describe unlawful conduct with sufficient particularity and clarity that ordinary men of reasonable intelligence are capable of discerning its meaning and conforming their conduct thereto. U.S. Const.Amend. XIV, § 1; La. Const. 1974, Art. I, §§ 2, 13; State v. Powell, 515 So.2d 1085 (La.1987).
The constitutionality of the provisions of LSA-R.S. 14:106 A.(1) has consistently been upheld. See State v. Ludwig, 468 So.2d 1151 (La.1985); State v. Walters, 440 So.2d 115 (La.1983); State v. Jacobson, 459 So.2d 1285 (La.App. 1st Cir.1984), writ denied, 463 So.2d 599-600 (La.1985). Having concluded that the concurrent regulation of obscenity by the state and the local governmental entities enumerated in LSA-R.S. 14:106 E. is permissible and that LSA-R.S. 14:106 E. does not preclude the instant prosecution, we necessarily find no merit to defendant's claim that the concurrent exercise *1288 of that power operates to deprive him of the constitutional requirement of adequate notice.
These assignments lack merit.
For the reasons set forth hereinabove, we affirm the convictions and sentences.
CONVICTIONS AND SENTENCES AFFIRMED.
SHORTESS, J., agrees with the conviction but this epileptic first offender got an excessive sentence, so I concur.
NOTES
[1] The record does not clearly reflect which of the boys was overheard by their father.
[2] We note that any such local regulation is further limited by La. Const. Art. VI, § 9(A) which provides, in pertinent part, that "[n]o local governmental subdivision shall (1) define and provide for the punishment of a felony...."
[3] Act 365 of 1976 added LSA-R.S. 33:4890 confirming the delegation of police power to all incorporated municipalities and the concurrent exercise thereof.
[4] We note that prosecution by a municipality bars a subsequent prosecution for the same act by a state. State v. Borne, 382 So.2d 160 (La. 1980). See also State v. Suire, supra. However, in the instant case no issue of multiple prosecution or double jeopardy was raised. We further note that any possible issue as to the validity of the Bogalusa ordinance itself is not the subject of this appeal.