JjPEATROSS, J.
Defendant, Carrol Narcisse, was charged with three counts of obscenity, a violation of La. R.S. 14:106(A). Defendant was tried by a jury and convicted as charged. At sentencing, the State filed an habitual offender bill of information. Defendant was found to be an habitual offender and sentenced to two-year sentences on each count. The trial court ordered the three sentences to be served concurrently with one another, but consecutively to any other hard labor sentence the Defendant was then serving. Defendant now appeals his conviction. For the reasons stated herein, we affirm.
FACTS
Defendant was convicted of aggravated battery in 1997 and sentenced to serve six years at hard labor at the David Wade Correctional Center in Claiborne Parish. Defendant suffered from asthma; and, during his incarceration, he required regular medical treatment in the infirmary. On September 2, 2000, due to exacerbation of his asthma, Defendant was in isolation room # 2 in the North Infirmary to receive breathing treatments to help improve his breathing. The isolation room is a locked hospital room that holds only one prisoner. On one wall of the isolation room there is a large picture window. The room is directly across a small hallway from the nurses’ station in the infirmary.
The infirmary treated prisoners, staff and visitors who are injured or who may need medical treatment while visiting the prison. The hallway containing the nurses’ station and the isolation rooms is one of the two general access routes for the infirmary used by the medical staff, 12correctional officers, persons seeking treatment and by the public touring the facilities.
Defendant’s first act of obscenity occurred at approximately 6:40 p.m. on September 2, 2000, when nurse Beth West (“West”) was on duty at the infirmary. Also on duty at the time was corrections officer Tineka Norton (“Norton”). As West was walking down the hallway between the isolation room and nurses’ station, she saw Defendant standing up in isolation room # 2, leaning almost against the picture window, with his pants pulled slightly down. Defendant was rubbing his erect penis while looking at Norton, who was near the nurses’ station and whose back was to the window. West was only a short distance from the window and she had a clear view of Defendant masturbating. West called out to Norton to turn around and look. When Norton did so, she only saw Defendant, “jumping back” away from the window and into his wheelchair.[1] West ordered Defendant to stop exposing himself and masturbating. West then contacted the supervising officer and wrote a report about the incident. Since Norton did not actually see Defendant masturbating, she did not write a report about the incident.
Defendant’s second act of obscenity occurred after corrections cadet Loleta Brown (“Brown”) came on duty on the *1189 same night of September 2, 2000.[2] At approximately 10:00 p.m., Brown was making her rounds. As she walked by isolation room #2, Brown observed Defendant standing by 13his wheelchair near the picture window watching her and rubbing his erect penis with his hand. Brown ordered Defendant to stop masturbating and to go to bed. Brown called the supervising officer and reported that Defendant was masturbating in her presence. She then filed a written report about the incident.
Finally, Defendant’s third act of obscenity was also observed by West on the same night. At approximately 11:00 p.m., West was sitting at the nurses’ station directly across from the picture window in isolation room # 2, where Defendant was located. West looked up and observed Defendant sitting in his wheelchair near the window. His pants were again pulled down and he was rubbing his erect penis while staring at West. West told Brown, who was also at the nurses’ station, “he’s (Defendant) doing it again.” Brown looked up and saw Defendant sitting in his wheelchair, with his pants pulled down, rubbing his erect penis with his hand. Brown observed that Defendant was looking at West as he was masturbating. West told Defendant to stop and to go to bed. Brown reported the incident to the supervising officer, but she did not write a report because she believed that the incident had been directed towards West. West wrote a report about the incident.
As previously stated, Defendant was charged with three counts of obscenity and the matter was tried by a jury. During the jury voir dire, Belinda and Ronald Perry were both called on the same prospective jury pool. Jury questioning established that Belinda Perry was a deputy clerk of court for Claiborne Parish and that Ronald Perry was her husband. During ^questioning, Mrs. Perry stated that, because of her job, it would be hard for her to take one side over the other. She also stated that she felt “beyond a reasonable doubt” on a percentage basis meant that the State had to prove 100 percent of the case to her. Ronald Perry answered that he did not have any problem with deciding the case one way or the other. He also stated that he knew “almost everyone” in the courtroom. At this point, Defendant’s counsel asked the entire panel if they also knew “almost everybody” in the courtroom and “several prospective jurors raised their hands.” Defendant’s counsel did not ask Mr. Perry any other question on this topic. When asked to give a percentage as to “beyond a reasonable doubt,” Mr. Perry answered that it meant on a percentage basis that the State had to prove 95 percent of the case to him.
The assistant district attorney challenged Mrs. Perry for cause because Mrs. Perry believed that beyond a reasonable doubt meant 100 percent proof. The trial court granted the State’s challenge as to Mrs. Perry, together with all other prospective jurors who believed that the State had to prove its case 100 percent.
Defendant challenged Mr. Perry for cause because Mr. Perry was married to Mrs. Perry, a deputy clerk of court, and because he knew most of the people in the courtroom. The trial court ruled that those relationships in and of themselves would not affect his ability to be a juror and that most everyone knew each other in a small place like Claiborne Parish. De *1190 fendant then used a peremptory challenge to remove Mr. Perry.
IsAffcer the jury was selected, the witnesses were sequestered from the courtroom and ordered not to discuss the case among themselves dr with anyone else involved in the matter. The trial judge then took a brief recess, during which time Defendant’s counsel noticed that an unidentified woman came into a corner of the courtroom and made contact with a witness for the State. Next, Defendant’s counsel noticed that the assistant district attorney and the unidentified woman went into a side room with that witness. Defendant’s counsel found the trial judge in chambers and made an objection to the interaction between the witness and the unidentified person.
After the recess, the trial judge conducted a hearing on Defendant’s objection to the unidentified woman talking to a witness after an order of sequestration was in place. Defendant moved for a mistrial, which was denied. The trial court allowed Defendant to question the unidentified person, who turned out to be Ann Boone (“Boone”), a prospective rebuttal witness for the State.[3]
At the hearing, Boone testified that she was an employee at the David Wade Correctional Center, that she was also the ex-wife of one of the State’s witnesses and that she had brought the “master record” from the prison for the witnesses to review their original reports of the incidents involving Defendant. She testified that some of the witnesses had not reviewed their individual reports of the incidents, which had taken place more than a year before the trial. Boone denied “prepping” the witnesses and stated that she was simply presenting them with requested reports.
DBoone further testified that her hallway conversation with the assistant district attorney and the witness, Barbara Hoof (“Hoof’), was just to introduce Hoof to the assistant district attorney. Defendant moved to be allowed to review the “master record,” but the trial judge denied the motion. The trial court did, however, order that Boone also be sequestered, with the “master record,” in the event that either she or the record were needed in the trial.
Hoof was also called to testify at the hearing. Hoof testified that, when she came into the courtroom, she sat with the other witnesses and no one told her that the witnesses had been sequestered. Only later did the assistant district attorney tell her that she was a witness in the case and that she could not talk to anyone. Hoof also testified that the assistant district attorney asked her what her recollections were about the report she had completed on the incident. As previously stated, Defendant’s motion for a mistrial was denied.
The jury trial commenced on November 28, 2001. At the close of the State’s case, Defendant moved for a directed verdict, arguing that the State did not prove that a prison is a public place or a place open to the public view, as required by La. R.S. 14:106(A), and that Defendant could not be convicted of obscenity unless it was proven that he committed the obscene act in a public place or a place open to the public view. The trial court denied Defendant’s motion, holding that whether a prison is a public place or a place open to a public view is a question for the jury to determine.
*1191 17After the trial, the jury found Defendant guilty on all three counts and the trial court ordered a pre-sentence investigation. Defendant was sentenced on February 5, 2002. The trial court reviewed the pre-sentence investigation report, which recommended the maximum sentence of three years at hard labor for each count and the maximum fine of $2,500 for each count. The trial court, however, found that the maximum sentences and fines were not appropriate. The State filed an habitual offender bill of information and Defendant was sentenced separately on each count to two years at hard labor and given the minimum fine of $1,000 for each count. The trial court ordered the three sentences to be served concurrently with one another, but consecutively to any other hard labor sentence Defendant was then serving and Defendant was given credit for time served. This appeal ensued.
On appeal, Defendant raises the following assignments of error:
1. The court and jury erred in qualifying jails and prisons as public places or places open to public view;
2. the court erred in allowing a juror to remain on the panel and not be removed for cause, thereby requiring defense counsel to use a peremptory challenge to remove him; and
3. the court erred in overruling defense motion for a mistrial due to the tampering of witnesses who were ordered under sequestration by the court.
DISCUSSION

Public Place or Place Open to the Public View

Defendant argues that his conviction must be overturned because he did not commit an obscene act in a public place or a place open to the public view. At the time Defendant committed the acts for which he was convicted, La. R.S. 14:106(A) provided:
|SA. The crime of obscenity is the intentional:
(1) Exposure of the genitals, pubic hair, anus, vulva, or female breast nipple in any public place or place open to the public view with the intent of arousing sexual desire or which appeals to the prurient interest or is patently offensive.
Defendant contends that jails and prisons are not public places or places open to the public view because, in 2001, the legislature amended La. R.S. 14:106(A) to specifically include jails and prisons in the statute. The current La. R.S. 14:106(A) provides:
A. The crime of obscenity is the intentional:
(1) Exposure of the genitals, pubic hair, anus, vulva, or female breast nipple in any public place or place open to the public view, or in any prison or jail, with the intent of arousing sexual desire or which appeals to the prurient interest or is patently offensive.
Defendant charges that this statute would not have been amended if the former version of the statute had already included jails and prisons in the definition of a public place or a place open to the public view. Since the former version of the statute did not cover jails and prisons as public places or places open to the public view, Defendant argues that he should not have been convicted of the obscenity offenses; and, therefore, his conviction must be overturned. We do not agree.
The jurisprudence in this state has never held that an act of obscenity could only occur in places that are completely open to the public or in places only open to the public view. In numerous decisions, *1192 courts in Louisiana have found public obscenity in acts committed in areas not otherwise considered “public.” For instance, in State v. Odom, 554 So.2d 1281 (La.App. 1st Cir.1989), writ granted and judgment modified on other grounds, 559 So.2d 1362 (La.1990), the appellate court found that the defendant committed an obscene act even though he was inside his own home when he exposed his genitals through an open window to people outside his home. Further, in State v. Allo, 510 So.2d 14 (La.App. 5th Cir.1987), writ denied 514 So.2d 1174 (La.1987), the appellate court upheld a conviction of obscenity even though the defendant was in his own yard and behind a gate when he exposed his penis to a person. In State v. Arabie, 507 So.2d 859 (La.App. 5th Cir.1987), the appellate court found that the defendant could be convicted of obscenity even though he was in his car, with his car door slightly open, when he exposed his genitals and was masturbating. Finally, in State v. Rodriguez, 98-2574 (La.App. 4th Cir.2/16/00), 753 So.2d 339, writ denied, 01-1788 (La.3/28/02), 812 So.2d 648, the appellate court held that the defendant could be convicted of obscenity even though he was sitting in his vehicle, with his car doors closed, while exposing his penis.
The compilation of these decisions indicate that a public place or a place open to the public view is defined as any place where other people can observe the obscene act. It is not necessary that a defendant expose himself to the general public in a completely public and open area in order to be convicted of obscenity. A public place or place open to the public view does not have to be open to all members of the public. Any person who can see the act of obscenity being committed is a member of the public. If we were to exclude jail infirmaries as public places or places open to the public 110view, then every staff member or visitor could be victimized and harassed by obscene acts from prisoners.
In the case sub judice, Defendant was behind an open picture window when he exposed his penis and masturbated in front of the staff at the jail infirmary. The hallway in front of the picture window was used by staff, visitors and members of the public on a daily basis. Anyone in the hallway can see through the window into the isolation room where Defendant was located. The staff at the jail are members of the public who observed Defendant exposing his penis and masturbating. The public nature of this area of the jail clearly makes it a public place and a place open to the public view. Moreover, the jail infirmary is much more open to and used by staff and visitors than other areas of a jail or prison.
The trial judge held that the question of whether the jail infirmary is a public place or a place open to the public view is a question for the jury to determine. We agree. All the previously mentioned jurisprudence have also found that this is a question for the trier of fact to decide. See Odom, supra; Allo, supra; Arabie, supra; Rodriguez, supra. The evidence presented to the jury was sufficient for a rational juror to conclude that Defendant was guilty of obscenity. The State submitted testimony as to the public location of the hallway in front of the picture window and that Defendant was exposing himself to members of the public, namely the staff at the jail. The jury found Defendant guilty on all three counts of obscenity under all requirements set forth by La. R.S. 14:106(A). We will not disturb this finding on appeal.
I nit is inconsequential that La. R.S. 14:106(A) was revised to specifically state that jails and prisons are included as pub- *1193 lie places or places open to the public view. This revision simply clarifies that the entire jail or prison is a public place or place open to the public view and not just certain public portions of a jail or prison, such as infirmaries. We find that the jail infirmary in this case is a public place and a place open to the public view under the former version of La. R.S. 14:106(A); and, therefore, this assignment of error is without merit.

Juror Removal

Defendant argues that the trial judge should have excused Mr. Perry on Defendant’s challenge for cause, based on the juror’s personal relationship with others in the courtroom and because his wife worked at the clerk of court’s office. Defendant maintains that, because Mr. Perry should have been dismissed on a challenge for cause, Defendant should not have had to use a peremptory challenge to dismiss him from service on the jury. La.C.Cr.P. art. 797 provides:
The state or the defendant may challenge a juror for cause on the ground that:
(1) The juror lacks a qualification required by law;
(2) The juror is not impartial, whatever the cause of his partiality. An opinion or impression as to the guilt or innocence of the defendant shall not of itself be sufficient ground of challenge to a juror, if he declares, and the court is satisfied, that he can render an impartial verdict according to the law and the evidence;
(3) The relationship, whether by blood, marriage, employment, friendship, or enmity between the juror and the defendant, the person injured by the offense, the district attorney, or defense counsel, is such that it is reasonable to conclude that it would influence the juror in arriving at a verdict;
(4) The juror will not accept the law as given to him by the court; or
11?.(5) The juror served on the grand jury that found the indictment, or on a petit jury that once tried the defendant for the same or any other offense.
The trial judge found no basis for Defendant to challenge Mr. Perry for cause and we agree. In State v. Tart, 93-0772 (La.2/9/96), 672 So.2d 116, cert. denied, 519 U.S. 934, 117 S.Ct. 310, 136 L.Ed.2d 227 (1996), the supreme court held that, “A trial judge has great discretion in determining whether sufficient cause has been shown to reject a prospective juror. Such determinations will not be disturbed on review unless a review of the voir dire as a whole indicates an abuse of discretion.” In the case sub judice, Defendant has not - shown why the court should have removed Mr. Perry as a prospective juror. Mr. Perry indicated that he would have no trouble in making a decision in the case either way and that he believed reasonable doubt meant that the State had to prove 95 percent of its case to him. Nothing in the record shows that Mr. Perry would not have been an impartial juror. Defendant did not establish that Mr. Perry had a personal relationship with the judge, prosecutor or any other trial participant listed in La.C.Cr.P. art. 797. Furthermore, in Tart, the supreme court held that, “We are reluctant to reverse a ruling of the trial judge on a challenge for cause where it does not appear from a review of the record as a whole that the trial judge has somehow abused his discretion.” In the case sub judice, we find no abuse in the trial judge’s discretion of not granting Defendant’s challenge of Mr. Perry for cause; and, therefore, this assignment of error is without merit.
*1194 | ^Tampering of Witnesses-Mistrial
Lastly, Defendant insists that he should have been granted a mistrial because there was unauthorized contact between two of the witnesses after the witnesses were sequestered by the trial judge. La.C.Cr.P. art. 775 provides:
A mistrial may be ordered, and in a jury case the jury dismissed, when:
(1) The defendant consents thereto;
(2) The jury is unable to agree upon a verdict;
(3) There is a legal defect in the proceedings which would make any judgment entered upon a verdict reversible as a matter of law;
(4) The court finds that the defendant does not have the mental capacity to proceed;
(5) It is physically impossible to proceed with the trial in conformity with law; or
(6) False statements of a juror on voir dire prevent a fair trial.
Upon motion of a defendant, a mistrial shall be ordered, and in a jury case the jury dismissed, when prejudicial conduct in or outside the courtroom makes it impossible for the defendant to obtain a fair trial, or when authorized by Article 770 or 771.
A mistrial shall be ordered, and in a jury case the jury dismissed, when the state and the defendant jointly move for a mistrial.
Specifically, Defendant asserts that his case was prejudiced because of the interference of witness Boone when she brought outside documents into the courtroom for witness Hoof to review prior to testifying.
A mistrial is a drastic remedy; and, except in instances in which the mistrial is mandatory, it is warranted only when a trial error results in substantial prejudice to the defendant, depriving him of a reasonable expectation of a fair trial. State v. Sepulvado, 359 So.2d 137 (La.1978). In the case sub judice, Defendant has not shown that he was substantially prejudiced by the contact and communication between the witnesses. |14 Further, Defendant has only made generalized allegations of prejudice and he has not shown that the contact and communication between the two witnesses has deprived him of a fair trial. Neither Boone nor Hoof were called to testify at trial. These two witnesses were not even present to hear the trial judge’s sequestration order, arriving in the courtroom after the order had already been given. Even if these witnesses had been called to testify at trial, witnesses in general commonly review their recorded recollection before trial. There was no tampering of the witnesses by anyone in this case. The trial judge was not in error when he denied Defendant’s motion for a mistrial; and, therefore, this assignment of error has no merit.
CONCLUSION
For the foregoing reasons, the conviction of Carrol Narcisse is affirmed.
AFFIRMED.

. Defendant was in a wheelchair because of an injury he had received in an accident while riding in a prison van on an earlier date.

. By the time of trial, Brown had remarried. At the time of the incident, her name was Loleta Marie Hollenshead.

. Ann Boone also went by the name Ann Goodwin. She gave her name as Ann Boone for the trial record.