729 So.2d 167 (1999)
STATE of Louisiana
v.
James R. BAKER.
No. 97-KA-2856.
Court of Appeal of Louisiana, Fourth Circuit.
March 3, 1999.
*168 Harry F. Connick, District Attorney of Orleans Parish, Susan Erlanger Talbot, Assistant District Attorney of Orleans Parish, New Orleans, Louisiana, Counsel for Plaintiff/Appellee.
James C. Lawrence, Jr., New Orleans, Louisiana, Counsel for Defendant/Appellant.
Court composed of Judge STEVEN R. PLOTKIN, Judge JAMES F. McKAY III, Judge DENNIS R. BAGNERIS, Sr.
PLOTKIN, Judge.
On June 24, 1996, the defendant, James Baker, was charged by bill of information with one count of obscenity. La. R.S. 14:106. He was arraigned July 2, 1996 and pled not guilty. A six member jury found him guilty as charged November 19, 1996. On July 10, 1997, the defendant filed a motion for new trial. On July 25, 1997, the motion was denied. The defendant waived delays and was sentenced to one year at hard labor.

FACTS:
Officer Donald Juneau, Orleans Levee Board Police, testified he was on routine patrol on Lakeshore Drive in New Orleans on the afternoon of March 21, 1996. At approximately 2:30 p.m., a white female flagged him down and reported that she had observed obscene conduct in the 1000 block of Lakeshore Drive. The woman said that she had been jogging and had seen a white male with brown hair and a beard masturbating in a red pickup truck. Officer Juneau radioed to fellow Officer Gavin Pagart who saw the truck. Juneau said that he ordered the defendant, who matched the description, out of the truck. He told him that a witness had seen him masturbating, that she had seen him with his hands on his erect penis, and that he was under investigation for obscene and lewd conduct. When the defendant stepped out of the truck, he had an obvious erection. The witness identified the defendant. Juneau seized a pair of binoculars and a bottle of "Wet" brand lubricant.
Officer Juneau said that there was another female witness to the crime, who had been jogging with the reporting witness, but that she did not want to get involved.
Officer Pagart testified that he responded to Officer Juneau's broadcast, and saw the red truck. He approached and asked the occupant, the defendant, who matched the broadcast description, to step out. When the defendant exited the truck, his erection was obvious. Officer Pagart saw the "Wet" lubricant on the dashboard of the truck. He said it was not in a prescription bottle, but looked like an over the counter product that could be purchased in a novelty store. He also saw the binoculars Officer Juneau found. The *169 witness identified the defendant as the perpetrator.
Elizabeth McGinnis Mavromatis testified that she was jogging with Jennifer Leonard; the two of them were in training for a road race. As they were running, Leonard asked her if she had seen the defendant masturbating. Mavromatis had seen the red truck, but had not seen the defendant masturbating. Leonard flagged down a police officer. Mavromatis explained to him that she had not noticed the masturbation, but that her three month old dog, with whom she had been running, might have diverted her attention. She said that she could not identify the defendant. Officer Juneau left with Leonard, and Mavromatis returned to her car.
Leonard said she first saw the defendant as she was jogging. He was walking around and did not look suspicious. She and Mavromatis ran down Lakeshore Drive, turned around, and on the way back, she saw the defendant in the truck, on the passenger side, with the door open, masturbating. He was "half in and half out of the truck." His penis was erect, and "his mouth seemed to be open like he was really enjoying himself." She said she did not think he was changing clothes or applying medication. She asked Mavromatis whether she had seen the activity, but she responded she had not. Leonard explained that Mavromatis was preoccupied with her dog. Leonard flagged down a police officer. He took her to the pickup truck where she identified the defendant.
The defense called Dr. Peter Galvan, an internal medicine doctor. He had never testified in court before. He described himself as a primary care physician, with four years in practice and two years with board certification. The court refused to qualify him as an expert in dermatology. Galvan testified that he treated the defendant for "jock itch", a fungal infection of the groin, on March 21, 1996 at a scheduled appointment. Galvan could not remember the exact time of day that he saw the defendant, but he placed the appointment sometime mid-day, and believed that it was before 4:00 p.m. He said that the defendant's condition was commonly seen in humid regions. He prescribed Lotrisone, an anti-inflammatory agent with a steroid added, and "pills" for systemic treatment. On cross, he said that scratching or itching the rash associated with the fungus might cause an erection. He said that he was not familiar with the lubricant found in the defendant's truck, although anything with a moisturizing property might alleviate the itch. He told the defendant to return to his office on April 4, but the defendant did not keep the appointment.

ASSIGNMENT OF ERROR ONE:
The defendant argues the evidence presented by the State was insufficient to support the conviction. In evaluating whether evidence is constitutionally sufficient to support a conviction, an appellate court must determine whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the defendant guilty beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Green, 588 So.2d 757 (La.App. 4 Cir.1991). However, the reviewing court may not disregard this duty simply because the record contains evidence that tends to support each fact necessary to constitute the crime. State v. Mussall, 523 So.2d 1305 (La.1988). The reviewing court is not permitted to consider just the evidence most favorable to the prosecution but must consider the record as a whole since that is what a rational trier of fact would do. If rational triers of fact could disagree as to the interpretation of the evidence, the rational trier's view of all the evidence most favorable to the prosecution must be adopted. The fact finder's discretion will be impinged upon only to the extent necessary to guarantee the fundamental protection of due process of law. Mussall; Green, supra. "[A] reviewing court is not called upon to decide whether it believes the witnesses or whether the conviction is contrary to the weight of the evidence." State v. Smith, 600 So.2d 1319, 1324 (La.1992).
In addition, when circumstantial evidence forms the basis of the conviction, such evidence must consist of proof of collateral facts and circumstances from which the existence of the main fact may be inferred according to reason and common experience. State v. Shapiro, 431 So.2d 372 (La.1982). *170 The elements must be proven such that every reasonable hypothesis of innocence is excluded. La. R.S. 15:438. This is not a separate test from Jackson v. Virginia, supra, but rather is an evidentiary guideline to facilitate appellate review of whether a rational juror could have found a defendant guilty beyond a reasonable doubt. State v. Wright, 445 So.2d 1198 (La.1984). All evidence, direct and circumstantial, must meet the Jackson reasonable doubt standard. State v. Jacobs, 504 So.2d 817 (La.1987).
The defendant was charged with committing the crime of "obscenity by intentionally exposing his genitals, pubic hair, or anus in a public place or place open to the public view, which act was performed with the intent of arousing sexual desire, or appealed to the prurient interest, or was patently offensive." La. R.S. 14:106(A).
In State v. Gradick, 29,231 (La.App. 2 Cir. 1/22/97), 687 So.2d 1071, a store cashier testified that she saw the defendant's penis as he was leaning against the store counter. The defendant was holding a long pea and talking of "Miracle Gro." The cashier said that she found the actions offensive. The court found the evidence sufficient even though the defendant testified that he may not have intentionally exposed himself and that the accidental exposure was possible since he might not have been wearing underwear and his zipper could have been unzipped. In addition, two of his daughters who were with him at the time of the alleged exposure testified that they did not see him expose himself. The court stated,
[A] reviewing court accords great deference to a jury's decision to accept or reject the testimony of a witness in whole or in part. (citations omitted).
In the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness's testimony, if believed by the trier of fact, is sufficient support for a requisite factual conclusion. (citations omitted).
In a case of obscenity, [a] victim's testimony is sufficient to establish that an obscene public exposure occurred. (citations omitted.)
Gradick, p. 5, 687 So.2d at 1073.
In State v. Alexander, 602 So.2d 291 (La. App. 2 Cir.1992), writ denied, 92-2674 (La.4/22/94), 637 So.2d 151, a college student called campus police and complained that a male was exposing himself in front of the cafeteria. The officer saw the defendant, who matched the description, outside the cafeteria talking to others. He was wearing a pair of cutoff blue jeans that were mid-thigh length. The shorts were split up the outer seams all the way to the waistband, which exposed his genitals. The defendant argues the exposure was not intentional. The court found that the testimony of the student and the officer, both of whom saw the exposed genitals was sufficient to support the conviction.
Finally, in State v. Arabie, 507 So.2d 859, 860 (La.App. 5 Cir.1987), cited by the State, the court also found the evidence sufficient in an obscenity case. The defendant was in his automobile slowly cruising around the parking lot of Lakeside Mall. A private security guard observed him park near three or four young women. The defendant exited his car and the officer noticed his pants unzipped and his penis and testicles exposed. Upon re-entering the automobile, Arabie began masturbating while watching the young women. After a chase, Arabie was arrested and charged with obscenity.
The court found the evidence sufficient even though the defendant's mother testified that the defendant had always had a problem holding his urine, and that he frequently took a bottle with him in the car in case he was stuck in traffic. The defendant's fiancee testified that when she went to retrieve the defendant's car two days after the arrest, there was a bottle of urine on the floor of the car.
In this case, Leonard testified that she saw the defendant masturbating. He exposed his penis in a public area that at the time was inhabited by others. He was partially in and partially out of his pickup truck. He had a look on his face that indicated he was enjoying himself. Leonard found the *171 behavior offensive. Although the defense suggested that the defendant was applying a medication for jock itch, the lubricant found in the truck was not prescription medication. Furthermore, the physician did not instruct him to treat his condition in public view. Common sense dictates that no reasonable person would apply medication to the groin area in the manner and place chosen by defendant, and then claim that he was following his doctor's orders. Binoculars were also found, indicating the defendant may have been watching others as a source of sexual stimulation. The jury obviously chose to believe Leonard over the defense.
The evidence was sufficient to show that the defendant intentionally exposed his genitals in a public place or place open to the public view, which act was performed with the intent of arousing sexual desire, or appealed to the prurient interest, or was patently offensive. This assignment is without merit.

ASSIGNMENT OF ERROR TWO:
The defendant complains several trial errors were made.
First, he complains that the trial court erred in refusing to qualify Dr. Galvan as an expert.
In State v. Craig, 95-2499 (La.5/20/97), 699 So.2d 865, 870, the Louisiana Supreme Court reviewed a trial court's refusal to qualify a witness as an expert:
Pursuant to La. C.E. art. 702, "If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise." In reviewing the decision of a trial court in qualifying a witness as an expert, courts typically place the burden on the party offering the witness as an expert and consider that the decision to accept or reject the offer rests with the sound discretion of the trial court. 2 Wigmore, On Evidence §§ 560-561 (3d ed.). This Court employs the same standard. See State v. Watson, 449 So.2d 1321 (La.1984) (the ruling of the trial court will not be disturbed absent manifest error); State v. Wheeler, 416 So.2d 78 (La.1982); State v. Montana, 421 So.2d 895 (La. 1982); Art. 702, comment d. Courts will also look to whether a witness has previously been qualified as an expert. State v. Lewis, 351 So.2d 1193(La.1977); State v. Perkins, 337 So.2d 1145 (La.1976). Furthermore, the refusal of the trial court to receive such evidence will rarely, if ever, provide grounds for reversal. State v. Stucke, 419 So.2d 939, 944 (La.1982).
In this case, the defense proffered Dr. Galvan as an expert in internal medicine. He testified that he spent four years of his residency followed by four years in private practice in the field. He had been board certified for two years. He maintained contact with professional journals, and had been published. He attended conventions. He had never testified in court before, and thus had never been qualified as an expert. The prosecutor stated that he had no problem with the doctor testifying regarding his treatment of the defendant, but that he had never been qualified as an expert, his publications had nothing to do with skin treatment, and he was no more an expert in the field of rashes and irritation of the skin than any other doctor. The court then allowed Dr. Galvan to testify regarding his treatment of the defendant, but refused to qualify him as an expert. As noted above, courts will look to whether a witness has previously been qualified as an expert. Here the witness had never been qualified so it does not appear that the trial court abused its wide discretion in refusing to qualify him. The witness was allowed to testify as to all matters regarding his treatment of the defendant. It is difficult to imagine what further evidence would have been elicited from the witness had he been qualified as an expert. Thus, even if the trial court erred in refusing to qualify the witness as an expert, any error was harmless.
The defendant argues that the trial court erred in allowing Officers Juneau and Pagart to use the words "sex" and "personal" when describing the lubricant. The defendant argues that the testimony was essentially allowing lay witnesses to testify as experts. *172 Juneau had used the words "personal, sex lubricant" in his police report. When asked why he used those words, he said "It was consistent with the scene and I have seen that in other areas of drugstores where it's located with item (sic) like that. I have no knowledge of items that is just my description to the best of my ability to describe what I have retrieved from the scene."
The testimony establishes that Officer Juneau simply described the lubricant in his police report to the best of his ability. He did not testify as an expert on sexual lubricants, and nothing about his testimony, or Officer Pagart's in referring to Officer Juneau's description in the police report was improper.
The defendant argues the trial court erred in allowing the trial judge to comment on the evidence. Specifically, the defendant complains about the following exchange:
Defense counsel: "So, and hour after made it - you busted this suspect and brought him down to book him you decide to make this bottle a "personal sex lubricant?"
ADA: "Objection"
Court: "Ask a question."
Defense counsel: "That's my question."
Court: "That's improper. He didn't decide to make it anything. Just ask him a question."
By its ruling, the trial court was simply instructing defense counsel to ask questions, not make statements. The ruling was proper.
The defendant also argues the binoculars were not relevant and should not have been admitted into evidence. "`Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." La. C.E. art. 401. Here, the defendant was masturbating in a public park with jogging women approaching him from some distance. The binoculars, which enabled the defendant to see at a distance, where relevant in that they tended to make the act of obscenity more probable.
This assignment is without merit.

ASSIGNMENT OF ERROR THREE:
The defendant argues his motion for new trial should have been granted for the same reasons he has raised in the above assignments. As discussed, his arguments do not have merit.
This assignment is without merit.
For the foregoing reasons, defendant's conviction and sentence are affirmed.
AFFIRMED.