753 So.2d 339 (2000)
STATE of Louisiana
v.
Troy RODRIGUEZ.
No. 98-KA-2574.
Court of Appeal of Louisiana, Fourth Circuit.
February 16, 2000.
*341 Harry F. Connick, District Attorney, Nicole Barron, Assistant District Attorney, New Orleans, LA, Counsel for Plaintiff.
Clifford Nunn, Tulane Law School, Community Service Project, Sherry Watters, Louisiana Appellate Project, New Orleans, LA, Counsel for Defendant.
(Court composed of Chief Judge ROBERT J. KLEES, Judge MIRIAM G. WALTZER and Judge JAMES F. McKAY, III).
WALTZER, Judge.

STATEMENT OF THE CASE
Defendant Troy Rodriguez was charged by bill of information on 2 December 1997 with three counts of obscenity, violations of La. R.S. 14:106. Defendant pleaded not guilty at his arraignment. The trial court denied defendant's motion to suppress the identification following a hearing conducted on 12 and 30 December 1997. Defendant was found competent to proceed at a 20 January 1998 lunacy hearing. Defendant was found guilty as charged on all three counts after a trial by a six-person jury. Defendant was adjudicated a second-felony habitual offender following a hearing on 17 March 1998. On 22 May 1998, defendant was sentenced on count one as a habitual offender to six years at hard labor without benefit of probation or suspension of sentence, and three years at hard labor on counts two and three, respectively, with all three sentences to run consecutively, and with credit for time served. The trial court denied defendant's motion to reconsider sentence. Defendant filed a written motion for appeal, which was granted on 21 July 1998.

STATEMENT OF FACTS
New Orleans Police Officer Gary LeRouge testified that on 22 September 1997, at approximately 5:27 p.m., he responded to two obscenity calls in Algiers. He cruised the area, looking for a small green truck with damage to the left front end, occupied by a white male. He observed defendant slowly driving a truck that matched the description, and blocked the truck's path with his patrol car. Officer LeRouge approached the truck, and observed that defendant's trousers were pulled down to his boots. On the front seat of the truck was an ice chest containing several "Little Debbie's" snack cakes.
Officer LeRouge said the stop was in a residential neighborhood near a playground in which numerous children were playing. He said several children later identified defendant. He displayed a photographic *342 lineup to one victim, which lineup he identified.
Eleven-year old S.C. testified that on 8 September 1997, she was selling wrapping paper for her school, along with two other little girls. A blue car came up to them, and the male occupant asked what they were selling. He said he did not have any money, gave S.C. some change, and wished her good luck. S.C. said the man was wearing a gray T-shirt but did not have any pants on. She said she could see his penis.
On 25 September 1997, Officer LeRouge showed her a photographic lineup. She said she picked out a photograph of the person who had been in the car that day. S.C. confirmed that Officer LeRouge did not tell her which photograph to pick, did not promise her anything if she picked out someone, and did not tell her that anything would happen to her if she did not pick out someone. S.C. confirmed that her parents did not suggest to her which photograph to pick out. She said she was sure the person she picked out was the man she had seen that day, and identified defendant in court as that person.
On cross-examination, S.C. said defendant was in a blue car that day, not a pickup truck. She said she had seen defendant's face on television after he was arrested, and that this was before police showed her the photographs.
Ten-year old B.R. testified that on 22 September 1997, at approximately 5:35 p.m., he and friends were playing in his backyard, jumping off an eight-foot high elevated platform, or "fort," onto a trampoline. He was sitting on top of the platform when he noticed a man sitting in his truck "playing" with his "private." B.R. identified a photograph of the truck, which he said he recognized because of the color and a dent in the front. He told M., who started screaming and told everyone else, and they all ran inside. B.R. subsequently drove around with his father and one of his father's friends looking for the individual. They came upon the scene after police had apprehended defendant. B.R. said defendant was on the ground with his pants down. B.R. identified defendant in court as the man he had seen that day.
On cross examination, B.R. testified that he was asked by police on the scene whether defendant was the man he had seen, and he told them it was him. B.R. said defendant was not wearing a shirt, and had not been wearing one when he saw him.
Thirteen-year old L.S. testified that he was with B.R. on top of the platform and saw a man in a green Nissan masturbating. He said he could see the man's penis. Police later transported him to a location where he identified defendant as the person he had seen masturbating. He saw defendant exiting his truck and pulling up his pants as police stood by. L.S. said police made defendant get on the ground after he pulled up his pants, and he confirmed that there was no time that defendant would have been on the ground with his pants down. L.S. also stated that he thought defendant was wearing a shirt, but could not remember what it looked like.
On cross examination, L.S. testified that when police picked him up to take him to the scene, they told him they had caught the guy he had seen and were taking him to identify him. He admitted that he knew when he saw defendant that he was the one they wanted him to identify, and said the district attorneys told him on the day of trial that they also had someone for him to identify. L.S. was asked by defense counsel whether defendant had said anything to any of the children that day, and L.S. said that defendant had gestured to B.R.'s sister M. L.S. said he learned defendant's name from a newspaper article, but said he had not seen defendant on television. On redirect examination, L.S. said he saw the article in the newspaper the day after he had identified defendant.
Thirteen-year old J.M. testified that he was with B.R. when B.R.'s younger sister M. got on the platform and told everyone *343 playing to come and look at a man. J.M. said he climbed onto the platform and saw defendant masturbating. He said defendant did not have a shirt on, and said that his pants were down to his knees. When J.M. was asked on cross examination whether defendant had said anything to any of them, J.M. testified that defendant had gestured to B.R.'s sister M.
Twelve-year old B.M., J.M.'s brother, testified that he was with the others that day and observed a man playing with himself. B.M. said he could see the man's penis. B.M. stated that after police apprehended the man they asked him if the man was the person he had seen, and he identified him. B.M. identified defendant in court. On cross examination, B.M. indicated that defendant had gestured toward a little girl before he drove off. B.M. said that when he saw defendant after he had been apprehended, he was on the ground in handcuffs, shirtless, but with his pants up.
Fourteen-year old N.M., brother of J.M. and B.M., testified that he was on the platform when B.R.'s little sister called out to them to look at a man in a truck. N.M. said he saw a man in a green truck masturbating. He said the man was not wearing a shirt and that the man's pants were at his ankles. N.M. said he could see the man's penis. He identified defendant in court as the man he had seen masturbating. On cross examination, N.M. said the man had been wearing light-colored blue jeans. When asked whether a pair of pants in evidence were the ones worn by the man, N.M. said he could not tell. On both cross examination and redirect examination, N.M. admitted that he did not get a good look at the man when he was in the truck. He said he could see only his glasses and the color of his hair. He stated that he saw the man's face after police apprehended him.
Eight-year old A.M. testified that on 22 September, he and a friend went to see a burned out house located one block away from his home in Park Timbers. When they were walking home on Grand Canyon Drive, a green Nissan drove by and stopped, and the occupant asked the boys for directions. The male occupant asked him if he wanted to buy some candy. A.M. said the man asked him to get an ice chest out of the back of the truck. A.M. got the ice chest and handed it to the man through the open window of the truck. A.M. confirmed that he saw the man's penis. He also said the man was wearing a shirt, but that he could not see his pants. A.M. went home to tell his father, who telephoned police. He said he later went to the scene, where he recognized the person he had seen in the truck. A.M. identified defendant in court as that man. On cross examination, A.M. said that it had been about 5:30 p.m., confirming that it was starting to get dark.

ERRORS PATENT
A review of the record reveals no errors patent.

ASSIGNMENT OF ERROR NO. 1
By this assignment of error, defendant claims the trial court erred in denying his motion to suppress his identification by S.C.
In State v. Broadway, 96-2659, p. 14 (La.10/19/99), 753 So.2d 801, 812, the Louisiana Supreme Court stated:
The defendant has the burden of proof on a motion to suppress an out-of-court identification. La.Code Crim. Proc. art. 703D. To suppress an identification, the defendant must first prove that the identification procedure was suggestive. State v. Prudholm, 446 So.2d 729 (La. 1984). An identification procedure is suggestive if, during the procedure, the witness' attention is unduly focused on the defendant. State v. Robinson, 386 So.2d 1374, 1377 (La.1980). However, even when suggestiveness of the identification process is proved by the defendant or presumed by the court, the defendant must also show that there was a substantial likelihood of misidentification *344 as a result of the identification procedure. State v. Prudholm, supra.

In Manson v. Brathwaite, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977), the Court held that an identification may be permissible, despite the existence of a suggestive pretrial identification, if there does not exist a "very substantial likelihood of irreparable misidentification." The factors which courts must examine to determine, from the totality of the circumstances, whether the suggestiveness presents a substantial likelihood of misidentification include (1) the witness' opportunity to view the criminal at the time of the crime; (2) the witness' degree of attention; (3) the accuracy of the witness' prior description of the criminal; (4) the level of certainty demonstrated at the confrontation; and (5) the time between the crime and the confrontation. Id. at 114, 97 S.Ct. 2243.
96-2659 at p. 14, 753 So.2d at 812.
Officer LeRouge testified at the motion to suppress hearing that he displayed a six-photograph lineup to two juvenile victims in the presence of their parents. The girls were S.C., who had been selling wrapping paper in her neighborhood, and her friend, who had been with her. Officer LeRouge said both girls immediately identified defendant's photograph. Officer LeRouge said he did not offer the girls anything in exchange for their identification of defendant, nor did he threaten or coerce them into making the identification. S.C. subsequently testified that Officer LeRouge laid the six photographs out flat and she picked out one.
Defendant does not argue that the above-described identification procedure was suggestive because of anything Officer LeRouge did. Rather, defendant's sole argument is based on testimony adduced at trial that S.C. viewed defendant's face on a television broadcast and read a newspaper article about the arrest prior to her identifying him in the photographic lineup.
Generally, when reviewing a trial court's ruling on a motion to suppress, an appellate court is not limited to evidence adduced at the hearing on the motion to suppress; it may also consider any pertinent evidence given at trial of the case. State v. Nogess, 98-0670, p. 11 (La.App. 4 Cir. 3/3/99), 729 So.2d 132, 137. La. C.Cr.P. art. 703(F) provides in part that a ruling prior to trial on the merits, upon a motion to suppress, is binding at the trial. Defendant did not raise the issue of the television news coverage at the motion hearing. Accordingly, he was barred from presenting new evidence during trial and then claiming that the trial court erred in sustaining the identification procedure at the motion hearing. See State v. Thompson, 448 So.2d 666, 669 (La.1984), reversed on other grounds, Thompson v. Louisiana, 469 U.S. 17, 105 S.Ct. 409, 83 L.Ed.2d 246 (1984). Of course, defense counsel was free to introduce any evidence at trial bearing on the suggestiveness and reliability of the identification procedure so as to undermine the identification in front of the jury.
As for Officer LeRouge's testimony at the motion hearing that there had been a relevant newspaper article, there is no evidence in the record that a photograph of defendant appeared in the newspaper. S.C. testified at trial that she did not see one. Defendant does not suggest how the identification procedure was tainted by S.C.'s reading of the newspaper article. For instance, there was no testimony elicited from S.C. at the motion hearing that she suspected that the arrested individual's photograph was among the six presented to her by Officer LeRouge because she read the newspaper article about defendant's arrest. Accordingly, defendant has not shown that the evidence introduced at the hearing on the motion to suppress established that the identification procedure was suggestive and unreliable, and that the trial court therefore erred in denying the motion.
*345 Moreover, even assuming the identification procedure was suggestive because S.C. had seen defendant's face on the television news broadcast, the evidence does not show that there was a substantial likelihood of misidentification. On the day of the crime S.C. walked up to the car in which defendant was seated and conversed with him for a few moments. She got close enough to him that she was able to show him the paper she was selling for her school, and he was able to hand her some change. These events transpired during daylight hours-the afternoon of 8 September. S.C. identified defendant approximately two weeks later. Officer LeRouge testified that she identified defendant's photograph immediately. There was no testimony concerning any prior description given by S.C. In view of the excellent opportunity S.C. had to view defendant at the time of the offense, it cannot be said that there was a substantial likelihood of misidentification solely because she had seen the news broadcast.
There is no merit to this assignment of error.

ASSIGNMENT OF ERROR NO. 2
By this assignment of error, defendant argues that the evidence is insufficient to sustain his convictions.
The standard for reviewing convictions for sufficiency of the evidence is whether, after viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found all of the essential elements of the offense proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Rosiere, 488 So.2d 965 (La.1986). The reviewing court is to consider the record as a whole and not just the evidence most favorable to the prosecution; and if rational triers of fact could disagree as to the interpretation of the evidence, the rational decision to convict should be upheld. State v. Mussall, 523 So.2d 1305 (La.1988). Additionally, the reviewing court is not called upon to decide whether it believes the witnesses or whether the conviction is contrary to the weight of the evidence. Id. The trier of fact's determination of credibility is not to be disturbed on appeal absent an abuse of discretion. State v. Cashen, 544 So.2d 1268 (La.App. 4 Cir.1989).
Defendant was convicted of three counts of obscenity, in violation of La. R.S. 14:106 A(1), which provides in pertinent part:
A. The crime of obscenity is the intentional:
(1) Exposure of the genitals, pubic hair, anus, vulva or female breast nipples in any public place or place open to the public view with the intent of arousing sexual desire or which appeals to prurient interest or is patently offensive.
Defendant argues that the evidence was insufficient relative to Count One, the 8 September 1997 offense, because the State failed to negate any possibility of misidentification. S.C. viewed defendant during daylight hours from a distance of not more than two arm-lengths. She later identified him. While defendant was in a different vehicle than the green truck he was in on the two other occasions, there is nothing to indicate that he was misidentified.
Defendant also claims that the State failed to prove that the offense occurred in a public place or a place open to public view. Defendant argues that because he was sitting in a vehicle with closed doors, his genitals were not within the public view. There is no merit to this argument. It is well-settled that a citizen has a diminished expectation of privacy in an automobile as opposed to a dwelling. See State v. Baker, 97-2856 (La.App. 4 Cir. 3/3/99), 729 So.2d 167.
Defendant in the instant case was not exposed to all members of the public, only to those who could see into his closed vehicle. Affected persons included S.C., whom he called over to his vehicle, and the children on top of the play structure, as well as any other members of the public walking by his truck or riding in school or *346 transit buses, trucks, and sport utility vehicles. Under these facts and circumstances, defendant in the instant case was in a public place and/or in a place open to the public.
Defendant argues as to Count Two that the State failed to prove beyond a reasonable doubt that he intentionally exposed himself to A.M. because A.M. said he could not see defendant's pants when he handed him the ice chest through the window of defendant's truck.
The provisions of La. R.S. 14:106 A(1) require only general intent. That is, the circumstances must indicate that the offender, in the ordinary course of human experience, must have adverted to the prescribed criminal consequences as reasonably certain to follow from his act. La. R.S. 14:10(2). No authority is necessary to support the proposition that exhibition of his genitals by an adult male under the circumstances present in all three of these cases is patently offensive, and that consequently, the evidence established general intent.
Defendant asked A.M. to hand him an ice chest which was in the rear of his pickup truck. A.M. testified that when he did so, he saw defendant's penis. He said he did not see any pants around defendant's feet because he did not look at defendant's feet. The jury obviously accepted A.M.'s explanation. Defendant also makes the same argument he made in Count One, that the State failed to prove that defendant exposed himself in a public place of place open to public view. For the previously stated reasons, there is no merit to this argument.
As to Count Three, defendant argues that the State failed to prove intentional exposure and failed to prove exposure in a public place or place open to public view. Several of the children who were playing on the "fort" indicated by their testimony that defendant gestured at M.R. as he sat in his truck with his penis exposed. This was after M.R. had summoned some of the other children to look at defendant. This proves that defendant knew he was being observed in an exposed state by members of the public. Defendant argues that the State failed to prove that defendant exposed himself in a public place or place open to public view because the residential yard in which all of the children were playing was surrounded by an eight-foot high fence. However, the children were engaged in play, climbing onto an elevated platform and jumping onto a trampoline. From their position on the elevated platform, the children could see easily into defendant's truck. Exposing oneself in a motor vehicle under these circumstances constitutes exposing oneself in a public place or place open to public view.
Viewing all of the evidence in a light most favorable to the prosecution, any rational trier of fact could have found all of the essential elements at to all three counts of the offense of obscenity present beyond a reasonable doubt.
There is no merit to this assignment of error.

ASSIGNMENT OF ERROR NO. 3
By this assignment of error, defendant claims his sentences are excessive.
La. Const. art. I, § 20 explicitly prohibits excessive sentences; State v. Baxley, 94-2982, p. 4, (La.5/22/95), 656 So.2d 973, 977. Although a sentence is within the statutory limits, the sentence may still violate a defendant's constitutional right against excessive punishment. State v. Francis, 96-2389, p. 6 (La.App. 4 Cir. 4/15/98), 715 So.2d 457, 461, writ denied, 98-2360 (La.2/5/99), 737 So.2d 741.
A sentence is constitutionally excessive if it makes no measurable contribution to acceptable goals of punishment, is nothing more than the purposeless imposition of pain and suffering, and is grossly out of proportion to the severity of the crime. State v. Johnson, 97-1906, pp. 6-7 (La.3/4/98), 709 So.2d 672, 677. A sentence *347 is grossly disproportionate if, when the crime and punishment are considered in light of the harm done to society, it shocks the sense of justice. State v. Baxley, 94-2982, at p. 9, 656 So.2d at 979.
In reviewing a claim that a sentence is excessive, an appellate court generally must determine whether the trial judge has adequately complied with statutory guidelines in La.C.Cr.P. art. 894.1 and whether the sentence is warranted under the facts established by the record. State v. Trepagnier, 97-2427, p. 11 (La.App. 4 Cir. 9/15/99), 744 So.2d 181, 189. Once we have found adequate compliance with La.C.Cr.P. art. 894.1, we must determine whether the sentence is imposed is too severe in light of the particular defendant and the circumstances of the case, keeping in mind that maximum sentences should be reserved for the most egregious violators of the offense so charged. State v. Ross, 98-0283, p. 8 (La. App. 4 Cir. 9/8/99), 743 So.2d 757, 762.9
In State v. Soraparu, 97-1027 (La.10/13/97), 703 So.2d 608, the Louisiana Supreme Court cited State v. Cook, 95-2784, p. 3 (La.5/31/96), 674 So.2d 957, 959 and held:
On appellate review of sentence, the only relevant question is "`whether the trial court abused its broad sentencing discretion, not whether another sentence might have been more appropriate.'"
Defendant was convicted on three counts of obscenity, in violation of La. R.S. 14:106. The trial court apparently sentenced defendant under the provision of La. R.S. 14:106 G(1), which provides for a sentence on a first conviction of a fine of not less than one thousand dollars nor more than two thousand five hundred dollars, or imprisonment with or without hard labor for not less than six months nor more than three years, or both. Defendant received maximum three-year sentences at hard labor on counts two and three, and the maximum six-year sentence at hard labor as a second-felony habitual offender pursuant to La. R.S. 15:529.1(A)(1)(a), with all three sentences to run consecutively.
Defendant's prior felony conviction, from July 18, 1994, was for aggravated oral sexual battery upon a five-year old male child. Defendant received a sentence of four years at hard labor on that conviction. Defendant was twenty-two years old at the time of sentencing in the instant case. In sentencing defendant, the trial court stated on the record:
The prior conviction in this case disturbs the court as much as the activity for which the gentleman was convicted by the jury. The prior conviction involves oral sexual activity with members of this gentleman's [sic] own family, his little nephews out of the parish of Jefferson.... The Court is greatly concerned of [sic] the history of activity that you that you have already amassed, that you have already been involved with. It appears that there is a danger that your early release would simply give you more time to prey on the children of this community and the adjoining communities, and that we cannot have. I would suggest to you that you truly consider while you're spending the time that you are going to have to serve in jail, you truly consider what must be done to put an end to this horrendous, unbelievable, unacceptable behavior. You best come to grips with the reality of this because as a third offender, if you ever come back to this state, your attorney will so advise you, you will be facing life imprisonment with no parole and no good time, as I appreciate the law.
... Each of these sentences are to run consecutively....
The Court is aware that there is a reluctance in the law to have sentences run consecutively. The Court, however, is aware under the law that the law of Louisiana provides that under certain circumstances, consecutive sentences are in fact appropriate. The Court is aware likewise that maximum sentences *348 are likewise deemed in certain circumstances to be appropriate. Sentences are allowed to reach the maximum level. They are appropriately imposed in cases involving the most serious violations of the described offense, and for the worst kind of offender. It has been written in a book that is far greater in meaning than [sic] in consequence in [sic] the Louisiana Criminal Code. "Woe to he [sic] who will hurt small children. It is better if he was never born." I believe there's a further reference that it would be better if such a person is cast into the sea. Consecutive sentences may be justified when due to past conduct or repeated, key word "past" conduct, key word "repeated" offenses, over an extended period, the defendant poses an unusual risk to the safety of the public. In this case our greatest asset, our greatest resource, in my opinion, are the children of this world. To deal with their sanctity, to deal with their innocence in any way is something that we cannot accept as a society. The fact that these first crimes against your own flesh and blood occurred in 1994. Let me double check it to make sure I am correct. In 1994, in February of 1994, with actual sentencing to the Department of Corrections in November from the Parish of Jefferson in 1994, shows me that despite a period of incarceration and what might be deemed by most people a sufficient passage of time for a person to have learned a lesson, that you have not. You have returned to the streets of this community now and have continued to engage in activity that greatly endangers the lives, the safety of our children.
In denying defendant's motion for reconsideration of sentence, the trial court stated: "I feel that this gentleman presents a danger, if not to himself, clearly and certainly to the children of this community and adjoining communities."
The trial court adequately complied with La.C.Cr.P. art. 894.1.
The next step is to determine whether the sentences are disproportionate to sentences imposed by courts in similar cases.
In State v. Mequet, 96-238 (La.App. 5 Cir. 8/28/96), 680 So.2d 98, the defendant pleaded guilty to obscenity by driving alongside of a school bus and masturbating within the view of the school children passengers. In affirming the defendant's sentence of eighteen months at hard labor, the appellate court noted that the trial court had stated that this was the maximum under the sentencing guidelines then in effect, and had noted several mitigating factors, including the defendant's age, stable residence and employment, his marital status and dependents, and the fact that defendant was undergoing counseling, with the counselor recommending that counseling would be the most effective solution to the defendant's problems. The trial court had also noted that incarceration would impose a hardship on defendant's family, and that numerous letters had been written attesting to defendant's character.
In State v. Allo, 510 So.2d 14 (La.App. 5 Cir.1987), writ denied, 514 So.2d 1174 (La. 1987), the court affirmed a sentence of six months in parish prison and fine of two hundred and fifty dollars imposed on a defendant who exposed his penis to a thirteen-year girl while sitting his backyard near an open gate.
The facts and circumstances in the instant case are far more egregious than those in Mequet and Allo, and the trial court's reasons for sentencing in the instant case adequately support the sentences. Both of the cited cases involved only a single incident of obscenity. In the instant case, defendant was convicted of three offenses involving young children occurring within a two week period. He had a prior serious felony conviction for aggravated oral sexual battery involving a five-year old child, for which he had served a term of imprisonment at hard labor.
Defendant mistakenly argues in this assignment of error that his sentence as a *349 habitual offender was without benefit of parole. The sentence contains no such stipulation. Also, defendant was apparently sentenced under the provisions of La. R.S. 14:106 G(1). However, La. R.S. 14:106 G(4) provides:
When a violation of Paragraph (1), (2), or (3) of Subsection A of this Section is with or in the presence of an unmarried person under the age of seventeen years, the offender shall be fined not more than ten thousand dollars and shall be imprisoned, with or without hard labor, for not less than two years nor more than five years, without benefit of parole, probation, or suspension of sentence.
In the instant case, defendant was convicted of obscenity in violation of La. R.S. 14:106 A(1), for exposing his genitals to a number of individuals, all of whom were under the age of seventeen. While there was no testimony as to the children's marital status, there is no doubt that all were unmarried. However, defendant could not have been sentenced under the provisions of La. R.S. 14:106 G(4) because the bill of information did not charge that he exposed his genitals to unmarried persons under the age of seventeen. See State v. Allo, supra, 510 So.2d at 20-21.
It appears that the facts of this case fit La. R.S. 14:106 G(4), which sets an enhanced penalty for acts of obscenity under La. R.S. 14:106 A(1) involving unmarried persons under the age of seventeen years. That penalty consists of a fine of not more than ten thousand dollars and imprisonment with or without hard labor for not less than two years nor more than five years, without benefit of parole, probation or suspension of sentence.
Defendant in the instant case was undercharged by the District Attorney's Office, as it appears he could have been charged, convicted and sentenced under La. R.S. 14:106 G(4). Defendant's sentences are appreciably less than he would have faced under that statutory provision.
Defendant argues that the consecutive nature of his sentences is excessive. We note that the three incidents did not arise out of a single transaction, nor were they part of a common scheme or plan. Therefore, under La.C.Cr.P. art. 883, defendant's sentences were to be served consecutively unless the court expressly directed that some or all of them be served concurrently. As the trial court noted in its reasons for sentencing, consecutive sentences are justified when the offender poses an unusual risk to the safety of the public due to his past conduct or repeated criminality. See State v. Johnson, 99-0385, p. 7 (La.App. 1 Cir. 11/5/99), 745 So.2d 217, 221. The trial court believed that defendant fell into this category of offenders. Considering the facts and circumstances of this case, it cannot be said that such a finding was erroneous.
There is no merit to this assignment of error.

CONCLUSION
For the foregoing reasons, defendant's convictions and sentences are affirmed.
SENTENCES AND CONVICTIONS AFFIRMED.